# Commonwealth v. Deitrick, Appellant.

*Criminal law—Murder—Burden of proof—Accidental killing—Reasonable doubt—Evidence.*

Where a felonious killing is charged, the burden rests throughout on the commonwealth to show beyond a reasonable doubt that the killing was intentional and willful, and where the evidence taken as a whole, that is to say, the evidence produced on both sides, raises a reasonable doubt in the minds of the jury as to whether the killing was accidental or intentional, they must acquit the accused, for the reason that the commonwealth has failed to meet the requirements as to proof.

On the trial of an indictment for murder the court charged as follows: "Whether or not the killing of the deceased was accidental, becomes an important question for us to determine from all the credible—from the preponderance of the evidence in the case. If you should reach the conclusion from the evidence, from the preponderance of the evidence, that the deceased came to his death through the accidental discharge of the pistol, then it would be your duty to acquit the defendant; if on the other hand, however, you should reach the conclusion from the preponderance of the credible evidence in the cause, that the prisoner unlawfully and maliciously slew and killed the deceased, then we will say to you, it would be your duty to convict him." *Held,* that the instruction was erroneous inasmuch as it applied to the defense of accidental killing, the rule of evidence which governs the cases where the defense is insanity.

Where the defense is an accidental killing, no exception to any gen-

eral rule is asserted, and instead of admitting the intentional act charged in the indictment, the defense directly challenges and controverts it. When this is the case, it is not a question of preponderance of evidence with respect to the matter of defense, but whether the effect is to leave a reasonable doubt in the minds of the jury as to whether the killing was intentional. If such doubt remains it must operate to acquit.

*Criminal law—Murder—Charge—Conflicting instructions.*

A verdict of guilty in a murder case will be set aside where it appears that the trial judge in the course of his charge submitted two conflicting measures of proof to the jury, one of which was erroneous, and it is impossible to tell from the consideration of the charge as a whole which of the conflicting directions was observed by the jury.

*Criminal law—Murder—Witnesses—Eyewitnesses to occurrence—Discretion of district attorney.*

On the trial of an indictment for murder the district attorney is not required to call all eyewitnesses to the occurrence. Much is left to his discretion under the general direction of the trial judge. He does his whole duty, if he gives notice to defendant of his determination not to call a particular eyewitness, so that the defendant may be afforded the opportunity to call him if he desires.

*Criminal law—Murder—Witness—Contradiction of party's own witness.*

The rule that a party calling a witness is not permitted to ask leading questions and is bound by his testimony, is liberally construed in modern practice, with a large measure of discretion in the court to permit parties to elicit any material truth without regard to the technical consideration of who called the witness. It is a discretion not susceptible of exactly defined limits beforehand, but to be exercised in the interest of justice and a fair trial under circumstances as they arise.

On a second trial of an indictment for murder a witness for the commonwealth testified that one shot had been fired by the prisoner. He was asked whether since the first trial, at which he had given similar testimony, he had not stated that two shots were fired. Upon his denial that he had so said, the commonwealth was permitted to call witnesses to testify that he had made such a statement. In reference to this testimony the court charged the jury that the witness's statement out of court was not substantive evidence that two shots had been fired, but at most it would only be considered as neutralizing the witness's testimony on the stand to the effect that but one shot had been fired, and that the jury should give the statement no other or different weight. *Held*, that the admission of the testimony with the instructions relating to it was without error.

*Criminal law—Murder—Degree of murder—Autrefois acquit—Twice in jeopardy.*

A conviction of murder in the second degree operates as an acquittal of the higher crime of murder of the first degree, and on the second trial, the prisoner cannot be convicted of murder of the first degree. The trial judge at the second trial commits no error in charging the jury that there can be no conviction of murder of the first degree.

It is for the jury and not for the court to determine the degree of murder where the case upon its facts admits of either finding; but where there is that in the case which, by operation of law, eliminates the higher degree, it is as much the duty of the judge to instruct with respect to this, as it is to instruct with respect to the law generally. Such instruction cannot be considered as a determination of the degree by the trial judge; it is a determination by the law.

MITCHELL, C. J., dissents.

Argued March 2, 1908. Appeal, No. 237, Jan. T., 1907, by defendant, from judgment of O. & T. Montour Co., Feb. T., 1906, No. 1, on verdict of guilty of murder of the second degree in case of Commonwealth v. Peter Deitrick. Before MITCHELL, C. J., FELL, BROWN, ELKIN and STEWART, JJ. Reversed.

Indictment for murder. Before EVANS, P. J. See 218 Pa. 36.

At the trial the defense was an accidental shooting of the deceased while the prisoner was handling a revolver. John Woll, a witness for the commonwealth, who had testified at the first trial that only one shot had been fired, repeated the same testimony at the second trial. He was asked whether he had not made statements in the interval between the two trials in the presence of two persons to the effect that two shots had been fired. The question was allowed. [1] Woll denied that he had made such statement. The court then admitted under objection and exception the testimony of the two persons to whom Woll was alleged to have made the statement as to the two shots. [2, 3]

The court charged in part as follows :

[In this case the commonwealth presses for a verdict of murder in the second degree. The commonwealth does not press for a verdict of murder in the first degree, and you, therefore, cannot convict the defendant of murder in the first degree.] [4]

[Whether or not the killing of the deceased was accidental, therefore, becomes an important question for you to determine from all the credible, from the preponderance of the evidence in the case. If you should reach the conclusion from the evidence, from the preponderance of the evidence, that Jones, the deceased, came to his death through the accidental discharge of the pistol, then it would be your duty to acquit the defendant. If, on the other hand, however, you should reach the conclusion, from the preponderance of the credible evidence in the cause, that the prisoner unlawfully and maliciously shot and killed Jones, the deceased, then we will say to you it would be your duty to convict him.] [5]

[The witness, James Woll, one of the eyewitnesses of this shooting affair, and whom it was the duty of the commonwealth to call, it was claimed by the commonwealth, took the commonwealth by surprise by testifying upon the stand that but one shot was fired, when, since the last trial and prior to his testimony now, he had stated to two of the commonwealth's witnesses that two shots were fired. The commonwealth alleges that she had reason to believe that Woll would testify from the stand according to his statements made to these witnesses. We permitted, under the circumstances, the commonwealth's counsel to inquire of the witness Woll whether he had not, on a certain occasion and at a designated place, to persons named, stated that two shots had been fired, and upon his denying it we permitted the persons to be called to testify to the statements made by him previously, viz. : that two shots were fired. We did this, and we call your particular attention to this, not for the purpose of adducing substantive evidence of itself to prove that two shots were fired ; but we permitted it only to neutralize the evidence given by the witness Woll, and we say to you that you must treat it only in that way and in no other way. That is, that you must not take these statements of Woll's made to these witnesses about two shots being fired as proof that two shots were fired, but that you may take them as neutralizing the statement made by the witness Woll on the stand that only one shot was fired.] [7]

Verdict of guilty of murder of the second degree. The prisoner appealed.

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions; (4, 5, 7) above instructions, quoting them.

*Grant Herring*, with him *S. P. Wolverton, S. P. Wolverton, Jr.*, and *Thomas Welsh*, for appellant.—A party cannot discredit his own witness by proving his contradictory statements upon other occasions, but must be restricted to proving the facts otherwise by other evidence: Stearns v. Merchants' Bank, 53 Pa. 490; Fisher v. Hart, 149 Pa. 232; Hacker v. Oil Refining Co., 73 Pa. 93; Smith v. Hagey, 14 Pa. Dist. Rep. 775.

Under this act of assembly it is made the exclusive duty and province of the jury to ascertain the degree of murder; Com. v. Sheets, 197 Pa. 69; Com. v. Sutton, 205 Pa. 605; Com. v. Fellows, 212 Pa. 297; Rhodes v. Com., 48 Pa. 396.

A mere preponderance of proof is not sufficient to convict any man: Com. v. Deitrick, 218 Pa. 36; Com. v. Webster, 59 Mass. 295.

*H. M. Hinckley*, with him *C. P. Gearhart*, district attorney, for appellee.—The testimony to contradict Woll was properly admitted: Bank of Northern Liberties v. Davis, 6 W. & S. 285; Stearns v. Bank, 53 Pa. 490; Farmers' Mut. Fire Ins. Co. v. Bair, 87 Pa. 124; McNerney v. Reading, 150 Pa. 611; Gantt v. Cox, 199 Pa. 208; Com. v. Wickett, 20 Pa. Superior Ct. 350.

Upon the reversal of the conviction, the trial and conviction are not a bar to a new trial upon the count on which the verdict of guilty was rendered; but a reversal does not disturb the verdict of acquittal upon the other counts: People v. Dowling, 84 N. Y. 478; Robinson v. State, 21 Texas App. 160 (17 S. W. Repr. 632); People v. Gilmore, 4 Cal. 376; Brennan v. People, 15 Ill. 511; State v. Tweedy, 11 Iowa, 350; State v. Ross, 29 Mo. 32; State v. Ball, 27 Mo. 324; State v. Martin, 30 Wis. 216; Slaughter v. State, 25 Tenn. 410.

Notwithstanding the fact that certain portions of the charge taken by themselves might be objectionable, yet, if the charge as a whole contains proper instructions to the jury, this court will not reverse: Williams v. Com., 29 Pa. 102; Kilpatrick v. Com., 31 Pa. 198; Alexander v. Com., 105 Pa. 1; McCloskey

v. Bell's Gap R. R. Co., 156 Pa. 254; Com. v. Johnson, 133
Pa. 293; Com. v. Zappe, 153 Pa. 498; Com. v. Buccieri, 153
Pa. 535; Com. v. Mika, 171 Pa. 273.

Opinion by Mr. Justice Stewart, April 20, 1908:

The appellant, charged with the felonious killing of James A.
Jones, has had two trials, each resulting in a verdict of guilty
of murder in the second degree.   On appeal from the first con-
viction, we were constrained to reverse and direct a new venire
because of manifest error in the charge of the court, too prej-
udicial to the defendant to be overlooked.   The defense set
up was that the killing was accidental; that the pistol was
discharged in sport with no purpose to inflict injury upon any-
one.   The instruction to the jury in unmistakable terms im-
posed on the defendant the burden of proving his defense be-
yond reasonable doubt.   We held, in strict accord with settled
principles, and in line with all our own adjudications, that
where a felonious killing is charged, the burden rests through-
out on the commonwealth to show beyond a reasonable doubt
that the killing was intentional and willful, and that where the
evidence taken as a whole, that is to say, the evidence pro-
duced on both sides, raises a reasonable doubt in the minds of
the jury as to whether the killing was accidental or intentional,
they must acquit the accused, for the reason that the common-
wealth has failed to meet the requirements as to proof.   The
opinion filed in that appeal, 218 Pa. 36, makes it unnecessary
to say anything here in support of the rule.   Quite as serious
a mistake was made on the last trial, and in the same con-
nection.   On the second trial as on the first, the defense rested
wholly and exclusively on an accidental killing, and with re-
spect to this defense the jury were charged as follows:
" Whether or not the killing of the deceased was accidental,
therefore, becomes an important question for us to determine
from all the credible—from the preponderance of the evidence
in the case.   If you should reach the conclusion from the ev-
idence, from the preponderance of the evidence, that Jones,
the deceased, came to his death through the accidental dis-
charge of the pistol, then it would be your duty to acquit the
defendant, if on the other hand, however, you should reach the
conclusion from the preponderance of the credible evidence in

the cause, that the prisoner unlawfully and maliciously shot and killed Jones, the deceased, then we will say to you, it would be your duty to convict him." The error here is too patent to require discussion; it applies to the defense of accidental killing, the rule of evidence which governs in cases where the defense is insanity. Because sanity is the normal condition of men, and insanity a defense set up to an act which otherwise would be a crime, we have held that the burden rests upon the defendant of proving his abnormal condition, and that by a preponderance of evidence : Meyers v. Commonwealth, 83 Pa. 131. Where the defense is an accidental killing, no exception to any general rule is asserted; and instead of admitting the intentional act charged in the indictment, the defense directly challenges and controverts it. When this is the case, it is not a question of preponderance of evidence with respect to the matter of defense, but whether the effect is to leave a reasonable doubt in the minds of the jury as to whether the killing was intentional. If such doubt remains it must operate to acquit. The error here complained of is not technical, but fundamental, since it was a virtual denial to the defendant of a right he has with all others, when charged with the commission of crime, to a fair trial according to the law of the land. Uniformity of rule in the administration of justice can only be disregarded at the expense of that equal and exact justice to all, which it is the great object of our government to secure. True it is, that in other parts of the charge the trial judge directed the jury that in order to convict the defendant, the testimony on behalf of the commonwealth must satisfy their minds of his guilt beyond a reasonable doubt; and it is insisted that such unqualified instructions correct the misdirection referred to. Taking the charge as a whole, it is impossible to tell which of the conflicting directions was observed by the jury. Certain it is that the misdirection of which complaint is made was not withdrawn; nor does it appear from the charge that the subsequent instruction was intended by way of correction. The jury had submitted to them two conflicting measures of proof; which they adopted no one can tell. In Commonwealth v. Gerade, 145 Pa. 289, the charge of the court was open to the same criticism, and the case was reversed, the same error being assigned. We there said : "But

with two measures of proof before them one substantially correct, and the other erroneous, how is it possible for us to determine which the jury adopted? There should be nothing left to conjecture, especially in a capital case. It is enough to know that the jury may have been misled by erroneous instructions on a point vital to the defense." The fifth assignment of error is sustained.

Since the case must go back for another trial, an expression of view with respect to the questions raised by other assignments seems to be required. There were but two eyewitnesses to the occurrence. On the first trial, as on the last, both these witnesses testified that the defendant had fired but one shot. The contention of the commonwealth was, notwithstanding this testimony, that he had fired two shots. Whether one or two was a most material fact in the case; for if two, the defense of an accidental killing would have absolutely nothing to support it. The commonwealth relied upon the circumstance that the revolver. with which the shooting was done showed two empty shells, and the additional fact that the defendant declared that he had shot into the ceiling, which testimony could only be explained on the theory that two shots had been fired. Both eyewitnesses were called as witnesses for the commonwealth. The second to be called was Woll. Having testified that but one shot was fired, counsel for the prosecution were permitted to inquire of the witness, by way of laying ground for contradiction, whether he did not since the former trial state that two shots were fired. Upon his denial that he had so said, counsel were permitted to call witnesses to testify to such declarations made by him. This is assigned for error. Manifestly in calling Woll as a witness the prosecuting officer had regard to a supposed rule in criminal procedure requiring the commonwealth to call all eyewitnesses to the occurrence. The impression that there is such a rule very widely obtains, but it is without judicial sanction. The disregard of it, if it ever existed, never of itself resulted in a reversal. In all such cases very much must be left to the discretion of the district attorney, under the general direction of the trial judge. There may be, often are, justifying if not compelling reasons why a prosecuting officer should not be required to call each and every eyewitness.

For instance, if he is satisfied from contradictory statements that any witness has made, that the witness is wholly unreliable, it is asking too much that he accredit him by calling him to the stand. He does his whole duty in such case, if he gives notice to the defendant of his determination not to call the witness, so that he may be afforded the opportunity to call him if he desires. It is, of course, the duty of a district attorney to present all the testimony on the material facts, whether adverse to the defendant or favorable to him. We said as much in Commonwealth v. Keller, 191 Pa. 122; but by this nothing more is to be understood than that there must not be a withholding of testimony by the prosecuting officer for no other reason than it would be favorable to the defendant. In the very recent case of Commonwealth v. Danz, 211 Pa. 507, it was assigned for error that the prosecuting officer had failed to call as a witness the physician who made the examination of the exhumed body of the party killed. We there said : " Under the circumstances there was no duty on the part of the district attorney to call McFarland as a witness for the prosecution, quasi judicial officer though he be, as much concerned to see that no innocent person suffer as to see that no guilty man escapes. His full duty to the prisoner was discharged when he notified her that he would not call him, coupled with the notice that she must do so if she thought the testimony would help her." In Donaldson v. Commonwealth, 95 Pa. 21, we said, with reference to the failure of the district attorney to call a certain witness, that the calling of the witness was demanded equally by the cause of humanity on the one hand or of justice on the other; and yet notwithstanding, the conclusion there was : " We do not reverse for this reason, and do not sustain the fifth assignment of error which raises the question, but merely express our opinion as to what should have been done under the peculiar circumstances of this case." The rule with respect to hostile and adverse witnesses might well apply here, if Woll was called under a supposed legal requirement; but it is not necessary to invoke such rule; nor is it necessary that surprise on the part of counsel at the attitude of the witness should have been asserted. However much it was insisted upon formerly that a party could not be allowed to impeach by contradic-

tion witnesses called by himself, the rule which prevented it has not only been much relaxed, but, as Mr. Wigmore in his treatise on evidence shows, has been in most jurisdictions wholly abrogated. In England, where it had its origin, some features of it, preserved by statute, yet remain, but the very marked tendency in this country is to escape from it entirely. Our own state furnishes no exception. In Gantt v. Cox & Sons Co., 199 Pa. 208, speaking by the present chief justice, we said : " The rule that a party calling a witness is not permitted to ask leading questions and is bound by his testimony, is liberally construed in modern practice, with a large measure of discretion in the court to permit parties to elicit any material truth without regard to the technical consideration of who called the witness. It is a discretion not susceptible of exactly defined limits before hand, but to be exercised in the interests of justice and a fair trial under circumstances as they arise." It is complained that the effect of allowing such an examination, and admitting in evidence the contradictions, was to bring into the case Woll's declarations that two shots were fired, as substantive evidence in support of the commonwealth's theory ; but any such result was so carefully guarded against by the trial judge as to make it impossible. In express terms he told the jury that Woll's statements out of court, to the effect that two shots had been fired, were not substantive evidence that two shots had been fired ; that at most they could only be considered as neutralizing his testimony on the stand to the effect that but one shot had been fired, and that the jury should give them no other or different weight. Exception is taken to the use of the word " neutralizing " by the court in this connection ; but it was entirely appropriate as will be seen from the following quotation which we take from Wigmore on Evidence, sec. 1018 : " The prior self-contradiction is not used assertively, i. e., we are not asked to believe his prior statement as testimony, and we do not have to choose between the two (as we do choose in the case of ordinary contradictions of other witnesses). We simply set the two against each other, perceive that both cannot be correct, and immediately conclude that he has erred in one or the other—but without determining which one. It is the repugnancy and inconsistency, that demonstrates his error, and

not the superior credibility of the prior statement. Thus, we do not in any sense accept his former statement as replacing his present one; the one simply neutralizes the other as a trustworthy one." There was no error in admitting the evidence; and the court sufficiently guarded its effect.

The other assignment of error relates to the instruction of the jury that, under the circumstances of the case, there could be no conviction of murder in the first degree. Of course, it is always for the jury, and never for the court, to determine the degree of murder, where the case upon its facts admits of either finding; but where there is that in the case which, by operation of law, eliminates the higher degree, it is as much the duty of the judge to instruct with respect to this, as it is to instruct with respect to the law generally. Such instruction cannot be considered as a determination of the degree by the trial judge; it is a determination by the law. There does exist a contrariety of view as to the effect to be allowed on a second trial—obtained at the instance of the defendant—of a conviction on the first of a lower grade of offense than the highest charged in the indictment. The great weight of authority in other states is, that such conviction operates as an acquittal of the higher grade, and that on a second trial, there can be no conviction of an offense of higher grade than that of which defendant was convicted. This view we regard as the better one, more consistent with reason and principle, and, what is more to the purpose than any individual opinion, it is the one adopted in our state. In Hollister v. Com., 60 Pa. 103, we have a clear recognition of this view of the law. We quote from the opinion of Chief Justice THOMPSON: "There is one matter on the face of this record which we cannot forbear noticing, namely, that this defendant was tried before this trial on the same indictment, and was acquitted of the burglary and larceny laid in the first count, but found guilty in the second, viz.: for inciting Harris to commit the crime laid in the first count. On application by the prisoner for a new trial the court granted it, but on the second trial held him to answer as before the whole indictment. Was this right? We think not. It is laid down in 3 Wharton's Criminal Law, last ed., sec. 3250, that 'Where there has been an acquittal on one count, and a conviction on another, a new trial can be granted only

on the count on which there has been a conviction; and it is error on a second trial to put the defendant on trial for the former.' Commonwealth v. Gabor, 209 Pa. 201, is an authority no less explicit. It is there said : " In the present case the indictment was for murder, but the verdict was guilty of manslaughter. Under the decisions in this state the verdict of manslaughter was so far an acquittal of murder that the appellant cannot now be found guilty on that indictment of any higher grade than manslaughter."

Nowhere can be found a more satisfactory vindication of the rule here asserted than in the opinion of Chief Justice FOLGAR in the case of People v. Dowling, 84 N. Y. 478. He there says: " The matter at the bottom is the constitutional provision that no person shall be expected to be twice put in jeopardy for the same offense; and yet new trials are granted in criminal cases on the motion of the accused, and if he gets a new trial he is thus subject to be put twice in jeopardy. This is done on the ground that by asking for a correction of error made on the first trial, he does waive his constitutional protection and does himself ask for a new trial, though it bring him twice in jeopardy. The waiver of constitutional protection unless it be expressly of the benefit of a verdict of acquittal, goes no further than the accused himself extends. His application for a correction of the verdict is not to be taken as more extensive than his needs. He asks a correction of so much of the judgment as convicted him of guilt; he is not supposed to ask for correction or reversal of so much of it as acquits him of offense. He therefore waives his privilege as to one, and keeps it as to the other. The waiver is construed to extend to the precise thing as to which relief is sought." Any different rule than that here indicated would, as we view it, be a serious impairment of a defendant's right to immunity from a second trial for the same offense, when a jury of his peers in a proper judicial proceeding has once found him not guilty. And this was the effect of the first verdict in this case with respect to the charge of first degree murder.

We find no merit in any of the assignments of error except the fifth. The error there complained of requires a reversal of the judgment.

Judgment reversed and venire de novo awarded.

Mr. Chief Justice Mitchell, dissenting:

That the commonwealth is bound to prove every element of the crime charged, by evidence which leaves no reasonable doubt, and that the jury should be clearly and positively so instructed, is not to be questioned. But I do not understand it to be the law that the judge is bound to repeat and reiterate this caution at every point in his charge where he takes up a different aspect of the case or a different line of the evidence. On this point as on every other, the charge should be regarded as a whole and its correctness estimated by its general effect on the jury. "A charge must be considered and interpreted as a whole. If so interpreted, it is a correct exposition of the law, and an adequate and impartial presentation of the case, it will be sustained, although portions of it, torn from their proper connection, may suggest error:" Commonwealth v. Johnson, 133 Pa. 293 (305).

In the present case the killing was not denied, the only defense being that the discharge of the pistol was accidental. On the previous trial the jury had unfortunately been instructed that the defense must be established beyond a reasonable doubt. This was held to have put an undue burden on the prisoner: Com. v. Deitrick, 218 Pa. 36. At the present trial the learned judge, clearly having in mind this undue burden, charged the jury, "Whether or not the killing of the deceased was accidental, therefore, becomes an important question for you to determine from all the credible—from the preponderance of the evidence in the case. If you should reach the conclusion from the evidence, from the preponderance of the evidence, that Jones, the deceased, came to his death through the accidental discharge of the pistol, then it would be your duty to acquit the defendant. If, on the other hand, however, you should reach the conclusion from the preponderance of the credible evidence in the cause, that the prisoner unlawfully and maliciously shot and killed Jones, the deceased, then we will say to you it would be your duty to convict him."

I am of opinion that this was a correct statement of the law. The prisoner had been flourishing an empty revolver and boasting of his skill as a marksman. On being taunted by the deceased as to his markmanship he went into another

room, got a loaded revolver and almost immediately leveled it at the deceased and fired.    The legal presumption that a man intends the natural and usual consequences of his act raises a clear inference that this was murder, and if no evidence to the contrary had been given, the jury would have been bound to so find it.    But the prisoner undertook to show that it was an accident and was bound to satisfy the jury of that fact by a preponderance of the evidence.    It has been so held in regard to self-defense, Alexander v. Com., 105 Pa. 1 (10), and the same principle should apply to reduce what is presumptively a murder to an accidental killing.    It is true that when this case was here before (218 Pa. 36) some authorities were referred to which hold that accident is not an affirmative defense which puts the burden of proof on the prisoner like self-defense, and while I must concede that the tendency of the language used is to credit those authorities, yet the decision was put upon another and entirely sound ground.    The rule contended for is illogical, wrong in principle and in true policy, and ought not to be considered adopted in Pennsylvania without more direct and cogent reasons than have yet been presented.

But if I am wrong in this, and conceding for the present that the part of the charge quoted was erroneous, yet it was abundantly cured by the context.

After defining murder and the statutory distinction of degrees the judge charged that " all murder not of the first, is necessarily of the second degree.    Murder in the second degree includes all unlawful and malicious killing, evincing depravity of heart, but where no intention to kill has been established by the evidence to the satisfaction of the jury, and beyond a reasonable doubt."

He then considered manslaughter and the bearing of intoxication, etc., using this emphatic language: " In every criminal trial there are two rights which belong to the accused and which attach to him at every stage of it, and in every view of it.    These are the presumption of innocence, and the benefit of the reasonable doubt.    The presumption of innocence must be overcome by proof, and by proof which will leave in the minds of the jury no reasonable doubt of guilt.    In trials for murder, as in all others of a criminal nature, the defendant is

entitled to the benefit of what is known as a reasonable doubt, that is, the feeling of uncertainty as to the guilt of the accused, which remains in the mind of an honest man after a full, fair and conscientious consideration of all the evidence."

And, finally, after reviewing the evidence and defining specifically the different verdicts which the jury might find, he closed his charge by repeating the caution, " As before intimated, before you convict the prisoner you should be satisfied of his guilt beyond a reasonable doubt.   If there is a reasonable doubt in your minds of his guilt, then he should be acquitted."   The jury retired for deliberation with these words in their ears, and it does not appear to me possible that the dullest mind could have · failed to appreciate the prisoner's rights on this subject.

I agree that in the choice of evils incident to the imperfection of human tribunals it is better that a guilty man should escape than that an innocent one should be convicted, but I do not believe in magnifying trivial breaches of technical rules, which could not possibly have had any effect on the real merits of the case, into errors which call for a reversal of the judgment.

By the first jury's want of nerve to do its duty a murderer whom any honest and courageous jury would have convicted in the first degree without leaving the box, has escaped the gallows certainly, and now is to be given a third chance to go free altogether.   I do not believe that the law requires any such failure of justice.