## Commonwealth v. Commander et al.

*Criminal law—Murder—Twice in jeopardy—Lower grades of homicide—Constitutional law.*

1. The constitutional right of a person not to be put in jeopardy twice for the same offense extends only to capital offenses, and not to lesser grades of homicide which are not punished capitally.

2. The Constitution prescribes no particular method or procedure by which such right may, in practice, be secured, and any course which secures the full right to the accused is an adequate compliance with the constitutional guarantee.

3. A plea of former jeopardy may be sustained as to first degree murder and overruled as to second degree.

4. Where a person is indicted for murder, and at the trial a juror is withdrawn, and the case continued because of absence of witnesses for the Commonwealth, and thereafter a plea of twice in jeopardy is filed by the prisoner, such plea may be overruled as to second degree murder and sustained as to first degree murder.

5. At the second trial, the defendant's rights will be protected by binding instructions that the jury cannot convict of murder of the first degree.

6. Such instructions do not take from the jury the right to determine the degree of the murder.

Demurrer to plea. O. and T. Phila. Co., Aug. Sess., 1926, No. 1092.

*E. V. Alessandroni*, Assistant District Attorney, for Commonwealth.

*T. J. Minnick* and *D. S. Malis*, for defendants.

GORDON, JR., J., Jan. 21, 1928.—This case is before us upon pleas of former jeopardy filed by the defendants, to which the Commonwealth has demurred.

We cannot agree with all of the facts contained in the stipulation of counsel filed in the case. The variance between our knowledge of the matter and the stipulation, however, does not affect the legal conclusion here reached. We may, therefore, state the controlling facts of the case as follows: The indictment charges murder, and when the case was called for trial the district attorney stated, in open court, that the Commonwealth did not intend to press for a verdict of murder of the first degree, as the evidence would not warrant it in so asking. Many of the usual formalities requisite in a trial for murder of the first degree were, therefore, dispensed with, and both the Commonwealth and the defense proceeded to trial as if a capital offense had not been charged. The defendants were tried jointly and the jury were not examined under oath on their *voir dire*, but were called, examined informally and accepted or rejected until the eleventh juror was in the box. During the selection of the jury the court recessed and those already chosen were allowed to separate with the consent of the defendants. After the eleventh juror was chosen, the district attorney informed the court and counsel for the defendants, at side bar, that, although the only material witness to the alleged homicide had been subpœnaed, he could not then be found, but that the Commonwealth hoped to be able to find the witness by the following day. As the regular adjournment hour had not been reached, the court told counsel for the defendants that it would complete the drawing of the jury, or postpone filling the last place in the box to the following day, if the defendants so desired. The defendants' counsel declined to make any arrangement upon the subject, and, inasmuch as the case had been treated as a non-capital offense, and it had been agreed that there was no necessity for keeping the jury together, the court concluded the filling of the panel, adjourned for the day and permitted the jury, with the consent of the defendants, to separate and go to their homes overnight. On the following day the district attorney informed the court that the Commonwealth had been unable to procure the

Commonwealth *v.* Commander et al.

missing witness and was not in a position, therefore, to go on with the case. In view of the circumstances, the trial judge thereupon withdrew a juror and continued the case, over the objection of the defendants. The defendants thereafter presented the pleas of former jeopardy now before us on the foregoing facts, and the question presented for our consideration is whether, under these circumstances, the pleas of former jeopardy are good, and, if so, to what extent they are valid pleas.

There is no doubt that, so far as a capital offense is concerned, a plea of former jeopardy under these circumstances is good. There was no overwhelming necessity, such as the serious illness of a juror, which would have justified the trial judge in withdrawing a juror and continuing the case. This the Commonwealth concedes. It is contended, however, that the right of a person not to be put in jeopardy twice for the same offense, which is guaranteed to the citizen by the Constitution, extends only to capital offenses; that such a plea is not available to those lesser grades of homicide which are not punished capitally; and that, therefore, while the pleas should be sustained, in so far as the capital offense of murder of the first degree is concerned, they should be overruled as to the charge of second degree murder comprehended within the bill of indictment under consideration. The defendants, on the other hand, reply to this argument, that the offense charged is the single offense of murder; that the degrees of murder are not differentiated into distinct offenses, even though the penalty in the one case is death and in the other imprisonment, and that, therefore, a plea of former jeopardy which is good as to the higher grade of murder bars a prosecution for either grade, the plea being to the indictment and not to the grade of the offense.

We have carefully considered the able and exhaustive argument presented by counsel for the defendants in support of this contention. The problem is by no means free from difficulty, but we are satisfied that this contention cannot be supported by authority or reason.

Article I, section 10, of the Constitution of Pennsylvania provides that: ". . . no person shall, for the same offense, be twice put in jeopardy of life or limb. . . ."

It has been definitely settled that this provision of the Constitution applies to capital offenses only (McCreary et al. *v.* Com., 29 Pa. 323), and, therefore, as long as the citizen is adequately accorded the right thus guaranteed, he cannot complain that it has been denied him. The Constitution prescribes no particular method or procedure by which that right may, in practice, be secured, and any course which secures the full right to the accused is an adequate compliance with the constitutional guarantee. The accused is not given any right to the enforcement of the guarantee in his favor by any particular method or procedure, and if one method would operate to give him immunity from prosecution for more than is guaranteed to him by the Constitution, while another fully and adequately secures his right and at the same time accords to the Commonwealth all of its rights, the accused cannot demand that the practice more advantageous to him be followed. If, therefore, on the one hand, a plea of former jeopardy would operate to debar the Commonwealth from its right of prosecution for the lesser offense of murder of the second degree, while, on the other hand, the power of the court over an improper verdict by binding instructions would fully protect a defendant in his constitutional rights, and at the same time enable the Commonwealth to require him to answer for the grade of homicide not punished by death, there is nothing in the Constitution which would prevent the latter method or practice from being adopted in preference to the former.

Since there is no constitutional regulation of the manner in which the right against former jeopardy shall be secured to the accused, it remains only to determine, first, whether a plea can be sustained as to murder of the first degree and overruled as to murder of the second degree; and, second, whether, assuming that it cannot, a defendant's rights can be adequately secured by overruling the plea and leaving it to the trial court at the second trial to protect him by giving binding instructions to the jury that they cannot convict of murder of the first degree.

Considering the first of these questions, the Act of March 31, 1860, § 74, P. L. 382, upon the subject of murder, provides: "All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration of, or attempt to perpetrate, any arson, rape, robbery or burglary, shall be deemed murder of the first degree, and all other kinds of murder shall be deemed murder of the second degree; and the jury before whom any person indicted for murder shall be tried shall, if they find such person guilty thereof, ascertain in their verdict whether it be murder of the first or second degree. . . ."

Under another section of the Act of 1860, indictments for murder were much simplified in form, but the fundamental distinction in law between murder in its different degrees was reiterated and accentuated by the section of the act just quoted. The higher grade of the offense is characterized by distinct, separate and controlling elements, and the penalty imposed is, of course, radically different. There is as much difference between murder of the first and murder of the second degrees as between robbery and larceny; or assault and battery to kill and aggravated assault and battery. Indeed, in the offense of murder itself, the decisions of our higher courts have recognized the distinct and independent nature of the two grades of the crime, for it has been held that a conviction of murder of the second degree bars a subsequent prosecution for murder of the first degree, notwithstanding the indictment contains but one count, because the conviction of the lower constitutes an acquittal of the higher offense: Com. v. Deitrick, 221 Pa. 7. The offenses being distinct, we see no objection in law to sustaining the pleas before us to the offense which is capital in its nature, and overruling them as to that which is not capital. Although there appears to be no reported case upon the subject, it would seem to us that, during the period in which robbery was a capital offense and larceny was not, a plea of former jeopardy to an indictment for robbery would not have barred a subsequent prosecution for larceny, even though larceny is a constituent element of robbery, and, under a robbery bill, a jury could acquit of the higher offense and convict of the lesser. It may be conceded that, in the few cases in this Commonwealth in which the question of former jeopardy has been treated by our higher courts, such a plea has been sustained generally to the indictment and the prisoner discharged. The negative pregnant from this is forceful; but it may be noted that the question here under consideration does not appear in any of those cases to have been raised or considered, and we take it that a lower court is not bound by a mere inference from a decision, unless such an inference is conclusive and unescapable. This is particularly so where the validity of the inference, and the intention of the court so to hold, may be reasonably questioned.

We, therefore, conclude, upon the proposition now under consideration, that a plea of former jeopardy may be sustained as to first degree and overruled as to second degree murder, and that the defendants' pleas before us are,

### Commonwealth v. Commander et al.

therefore, good, in so far as the offense of murder of the first degree is concerned, and should, to that extent, be sustained; but that they are not good as to murder of the second degree, or as to any other non-capital offense comprehended in the indictment, and, as to such offenses, should be overruled.

If it be assumed, however, for the sake of argument, that in sustaining a plea of this character the defendant must be discharged from the indictment generally and the Commonwealth be thus deprived of its rights, such a course should not be followed unless the defendant's rights cannot be secured to him in any other effective way.

This brings us to the second and last question for consideration; that is to say, whether a defendant's rights can be adequately secured by overruling the plea and leaving it to the trial court at the second trial to protect him by giving binding instructions to the jury that they cannot convict of murder of the first degree. It is true that our higher courts have repeatedly declared that the determination of the degree of a murder cannot be taken from the jury; that this is its exclusive province: Lane v. Com., 59 Pa. 371. It will be noted, however, that this has only been said in connection with attempts of lower courts to limit the jury to a conviction of first degree murder or acquittal. In such cases it is well settled as a cardinal principle of law that the right of the jury to fix even a first degree murder at second degree cannot be taken from them. The reverse of this principle does not follow, however. The power of the court to protect the defendant from an improper conviction is equally well settled, and is constantly recognized and employed in all forms of crime, even to the extent of binding instructions for a full acquittal. Indeed, in prosecutions for murder itself, as has already been pointed out, it is the duty of the trial judge to protect a defendant on his second trial, after a conviction of second degree murder, by instructing that there can be no conviction of the higher degree. "Such instruction cannot be considered as a determination of the degree by the trial judge; it is a determination by the law:" Com. v. Deitrick, supra. It follows, therefore, that, since the defendants' constitutional rights can be fully and adequately protected at their second trial by the trial court, they are not entitled to have their pleas sustained if to do so would injuriously affect the interests of the Commonwealth.

The Commonwealth's demurrer to the defendants' pleas of former jeopardy are, accordingly, overruled as to murder of the first degree and sustained as to murder of the second degree.