Commonwealth *v.* Schmidt, Appellant.

564

Argued November 11, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*William J. Myers,* for appellant.

*Newton C. Taylor,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, March 20, 1970:

On December 6, *1963,* a jury found Ross Omer Schmidt guilty of murder in the second degree. Defendant's post-trial motions were dismissed and he was sentenced to imprisonment for not less than eight nor more than sixteen years. An appeal was filed with this Court, but it was withdrawn by defendant after a Certificate of Discontinuance was filed by defendant on October 15, 1964. On July 31, *1968,* this Court allowed defendant to appeal nunc pro tunc. On this appeal, he raises several important questions which will be discussed after a brief summary of the facts.

The Commonwealth called three witnesses to testify—Dr. Dickinson Lipphard, a pathologist who examined the deceased; Howard R. Parlett, Pennsylvania State Trooper, who was one of the troopers called to

the scene shortly after the murder; and Vickie Schmidt, the sixteen-year-old daughter of defendant and his wife, and an eyewitness to the murder. From this testimony, the jury could have found the following facts.

Defendant and the deceased, Marjorie Alice Schmidt, were married and lived in Spruce Creek, Huntingdon County, although for several weeks prior to June 3, 1963, defendant had not been living with his family. On the evening of June 3, 1963, defendant came home around 7:30 P.M. and spoke with his children for a few minutes about their Mother, picked up a few tools and then left. Defendant's wife returned home at approximately 11:30 P.M.* and told Vickie that she was going out with "Duke" Isenberg. She then left her home, and Vickie went to bed.

Vickie was awakened at approximately 12:30 A.M. by her Mother "yelling" for Vickie "to call the police." Defendant and his wife were arguing in the front yard about "Duke" Isenberg. Vickie and her Aunt, Catherine Mae Zimmerman, who was living at the Schmidt home, came downstairs and stood in the hallway and watched defendant and his wife arguing in the front yard and on the front porch. Vickie testified that "Dad was hitting Mom," and that defendant "had hold" of her Mother's arms as they came into the house. They continued to argue for another ten or fifteen minutes, when the defendant suddenly pulled out a gun. Vickie grabbed defendant's arm and he pushed her back. Catherine (the Aunt) attempted to grab defendant's arm, but he pushed her back, which caused her to fall over a couch. Defendant then shot and killed his wife and turned and pointed the gun at Vickie, who ran out the back door screaming. Vickie testified that she heard her Aunt Catherine scream and another gunshot.

---

* The deceased operated a small store in a nearby town, which she usually closed around 11:00 P.M., and usually returned home at around 11:30 P.M.

Defendant was subsequently indicted and found guilty of the murder of his wife, Marjorie Schmidt.

Defendant first contends that the evidence was not sufficient to convict him of murder in the second degree. It is hornbook law that the test for the sufficiency of evidence—irrespective of whether it is direct or circumstantial, or both—is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime of which he has been convicted. *Commonwealth v. Commander,* 436 Pa. 532, 260 A. 2d 773 (1970) ; *Commonwealth v. Rightnour,* 435 Pa. 104, 253 A. 2d 644; *Commonwealth v. Frye,* 433 Pa. 473, 252 A. 2d 580; *Commonwealth v. Tabb,* 417 Pa. 13, 16, 207 A. 2d 884; *Commonwealth v. Finnie,* 415 Pa. 166, 202 A. 2d 85; *Commonwealth v. Burns,* 409 Pa. 619, 634, 187 A. 2d 552.

Defendant bases his first contention upon the fact that the District Attorney used improper trial methods in failing to call *all* the witnesses he had subpoenaed and who were present in the courtroom, particularly Catherine Zimmerman, who was the other eyewitness to the killing. When the Commonwealth concluded its case, the District Attorney announced in open Court that three other witnesses named on the bill of indictment—Detective Sergeant Eugene Wegemer, and Trooper Thomas Ruegg (the prosecutor), both with the Pennsylvania State Police, and Catherine Zimmerman—were present in the courtroom and several other witnesses who had been subpoenaed were also present and available to the defendant or the Court. Defendant* did not call any of these witnesses who were pres-

---

* Defendant was represented by two Court-appointed attorneys. One of the attorneys had been a former District Attorney for eight years and had long service before the Bar as both a civil and crim-

sent and available, but instead requested the Court to release and discharge them from further attendance. From these facts, defendant contends that he did not receive a fair trial. Defendant's contention is completely devoid of merit.

In *Commonwealth v. Horn*, 395 Pa. 585, 150 A. 2d 872, the Court pertinently said (page 589): "There is no duty on the Commonwealth to call witnesses whose names appear on a bill of indictment or even eye witnesses, if it believes after examination or investigation that their testimony is unreliable, or unworthy of belief, or surplusage or irrelevant. The law in such a case merely requires a District Attorney to notify the Court and defense counsel that he does not intend to call certain persons whose names appear on the bill of indictment as Commonwealth witnesses: Commonwealth v. Palermo, 368 Pa. 28, 81 A. 2d 540; Commonwealth v. Deitrick, 221 Pa. 7, 14, 15, 70 A. 275. See also: Commonwealth v. Danz, 211 Pa. 507, 522, 60 A. 1070; Commonwealth v. Giacobbe, 341 Pa. 187, 195, 19 A. 2d 71.

"In Commonwealth v. Palermo, 368 Pa., supra, the Court sustained the refusal of the District Attorney 'to . . . call the only eye witness to the shooting'. The Court said (pages 32-33): 'It is a settled principle of law that the Commonwealth must try a case fairly and that the district attorney is not a "vindictive seeker for vengeance." Commonwealth v. Karamarkovic, 218 Pa. 405, 408, 67 A. 650 (1907). However, it is equally well established that the district attorney is not obliged to call all of the eye witnesses, "nor a particular eye witness where he has reason to believe that the witness is unreliable." Commonwealth v. Thurman, 167 Pa.

---

inal trial lawyer. Defense counsel chose not to call any of the twelve Commonwealth witnesses present in the courtroom, nor did he call any other witnesses, except six character witnesses.

Superior Ct. 642, 647, 76 A. 2d 483 (1950). The call-
ing of witnesses is within the discretion of the district
attorney under the general supervision of the trial
judge: Commonwealth v. Karamarkovic, supra.; Com-
monwealth v. Deitrick, 221 Pa. 7, 14-15, 70 A. 275
(1908).; Commonwealth v. Giacobbe, 341 Pa. 187, 196,
19 A. 2d 71 (1941). . . .' ''

Defendant further contends that the evidence was
insufficient, because the Commonwealth failed to pro-
duce the murder weapon, i.e., the gun. In a murder
case, the Commonwealth is not required to produce the
weapon used to kill the victim, it is sufficient if the
Commonwealth produces evidence from which a jury
(or Judge) can find that the death of the victim re-
sulted from a felonious act. *Commonwealth v. Gates,*
392 Pa. 557, 563, 141 A. 2d 219.

The pathologist who performed the autopsy, Dr.
Lipphard, testified that the cause of death was a head
injury which was a penetrating wound caused by a
metallic object which entered and destroyed a vital
part of the brain. The State Trooper, Officer Parlett,
testified that he arrived at the Schmidt home half an
hour after the shooting and he described the type of
head wound the deceased had received. Vickie, their
daughter who was an eyewitness of the shooting, lucid-
ly testified as to the sequence of the events of the eve-
ning and defendant's actual shooting of her Mother.
All of their testimony could have been believed by the
jury and is amply sufficient to justify the jury's ver-
dict. For these reasons, the motion in arrest of judg-
ment is denied.

The defendant next alleges that the trial Court com-
mitted reversible error in limiting the scope of his
cross-examination of Vickie, the only eyewitness who
testified for the Commonwealth. The scope and limits
of cross-examination are largely within the discretion of
the trial Court and will not be reversed in the absence

of a clear abuse thereof or an error of law. *Commonwealth v. Cheatham*, 429 Pa. 198, 203, 239 A. 2d 293; *Commonwealth v. Woods*, 366 Pa. 618, 622, 79 A. 2d 408; *Townsend Will*, 430 Pa. 318, 323, 241 A. 2d 534.

The direct examination of Vickie was limited, except for two inconsequential matters, to the events that occurred the day and the night of the murder. Defense counsel attempted to cross-examine Vickie concerning "the background, family life and home life of the defendant as it bears upon his actions that evening, his state of mind and the observations of the witness over the period of years." The trial Court repeatedly stated that defendant was not precluded from offering such testimony "in connection with the presentation of the defense of this case." The trial Court did not abuse its discretion in limiting the scope of the cross-examination of Vickie to matters as to which she testified in chief, and this is especially so when the obvious purpose of the questions was to introduce or develop the defendant's own case. *Okotkewicz v. Pittsburgh Rwys. Co.*, 397 Pa. 303, 306, 155 A. 2d 192; *Commonwealth v. White*, 340 Pa. 139, 16 A. 2d 407; *Commonwealth v. Fencez*, 226 Pa. 114, 116-117, 75 Atl. 19; see also, *Kline v. Kachmar*, 360 Pa. 396, 61 A. 2d 825. Accordingly, defendant's motion for a new trial must be denied.

We have reviewed the entire record, and especially those parts pertaining to every one of appellant's various contentions, and we find no merit in any of them.

Judgment of sentence affirmed.