396 A.2d 714

**COMMONWEALTH of Pennsylvania**

v.

**Lawrence CALVERT a/k/a Wilbur Calvert, Appellant.**

Superior Court of Pennsylvania.

Submitted April 10, 1978.

Decided Dec. 29, 1978.

Lester G. Nauhaus, Assistant Public Defender, Pittsburgh, for appellant.

Robert L. Eberhardt, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

CERCONE, Judge:

This is an appeal from a jury verdict in Allegheny County that found appellant guilty of violating the Pennsylvania Uniform Firearms Act.[1]  Appellant's post-verdict motions were denied.  We affirm the decision of the lower court.

At the trial, appellant's counsel stipulated that appellant, Lawrence Calvert, had been convicted of burglary in 1968. The testimony at trial then revealed the following set of facts.  Detective Robert Payne received a call from James Dolfi, who was unknown to Payne at the time.  Dolfi informed him that illegal sale of firearms was being conducted and Calvert was involved.  Dolfi lived in the apartment adjoining appellant's which was connected by a joint bathroom.  Dolfi took Payne to the apartment and informed Calvert that Payne was the man who had come to talk about the gun.  In response, Payne testified that appellant said, "Tell him to come in," whereupon he entered appellant's apartment through the joint bathroom.  Officer Payne testified that appellant went into another room and returned with a gun; Calvert testified that on a prior occasion Dolfi

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1;  18 Pa.C.S.A. § 6105.

had come to Calvert's apartment and had placed the handgun on an end table in his apartment and it had not been touched since. After a brief discussion concerning the sale of the handgun, Payne signaled for the other officers to enter the apartment. Appellant was then arrested.

In explaining his version of the transaction, Calvert stated that Dolfi had asked him to help with the sale of the gun because Dolfi needed the money since he wanted to get married. Appellant testified that he protested at first but later acquiesced. According to Calvert, Dolfi then brought the handgun into appellant's apartment and set it on an end table. Calvert said he never touched the gun.

The informant, Dolfi, was Calvert's personal friend who had been a member of a three person partnership with him that had terminated several months prior to the incident in question. Dolfi's name was mentioned in the indictment, but he was not listed on the indictment as a Commonwealth witness nor was he called at trial. Although there were attempts made to locate Dolfi during the trial so that he might testify as a defense witness, the informant could not be found. At the close of the trial, defense counsel requested the following charge:

"Because James Dolfi was working in cooperation with the police, you may draw the inference from the Commonwealth's failure to produce him that his testimony would have been detrimental to the Commonwealth's case."

The trial judge refused to charge on this point. Based on this evidence, appellant was acquitted on the charge of the sale of the firearm, but was convicted of the possession of it under section 6105 of the Crimes Code which reads:

"Former convict not to own a firearm, etc. No person who has been convicted in this Commonwealth or elsewhere of a crime of violence shall own a firearm, or have one in his possession or under his control."

Appellant was sentenced to two to five years' imprisonment.

Two issues are presented for our review on appeal: first, whether the lower court erred in refusing to charge on the

"missing witness inference;" and two, whether there was sufficient evidence to convict appellant absent the informant's testimony and whether this absence also prevented appellant from proving his entrapment defense.

## I.

The general rule concerning a missing witness is that the Commonwealth is not bound to call all witnesses listed on the indictment or even eyewitnesses if, after examining their testimony, it is found their testimony is unreliable, irrelevant, or merely cumulative. *Commonwealth v. Jones,* 455 Pa. 488, 317 A.2d 233 (1974); *Commonwealth v. Schmidt,* 437 Pa. 563, 263 A.2d 382 (1970); *Commonwealth v. Gibson,* 245 Pa.Super.Ct. 103, 369 A.2d 314 (1976). The Commonwealth's duty in such a case is to notify the defense counsel and the Court that it does not intend to call certain persons whose names are listed on the indictment. The Commonwealth should also apprise the defense of the witness' full name and whereabouts. *Commonwealth v. Gray,* 441 Pa. 91, 271 A.2d 486 (1970). However, these rules do not apply if the witness who was not called by the Commonwealth did not appear in the list of names of witnesses in the indictment, and if the witness was equally available to the Commonwealth and defense counsel. *Commonwealth v. Vorhauer,* 232 Pa.Super. 84, 331 A.2d 815 (1974).

We agree with the lower court that the case before us clearly fits within these two exceptions to the general rule. First, James Dolfi's name did *not* appear as one of the Commonwealth's witnesses on the indictment. Therefore, there was no duty on the part of the district attorney to notify defense counsel that Dolfi would not testify. *Commonwealth v. Jones,* supra. Second, and more importantly, Dolfi was equally available to both parties. In fact, he probably was more available to appellant since they were neighbors who shared a joint bathroom. This was not a case where the informant's identity was being withheld by the Commonwealth in order to protect him. E. g., *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

Instead, Dolfi was a close personal friend of appellant; his identity and whereabouts were well known to appellant and his counsel. Therefore, since Dolfi was not particularly within the control of the Commonwealth nor was his identity withheld, the trial judge correctly refused appellant's request for charge on the "missing witness inference." *Commonwealth v. Vorhauer*, supra.

## II.

The second issue is closely related to the first. It is axiomatic that the test for the sufficiency of the evidence is "whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime of which he has been convicted." *Commonwealth v. Schmidt*, 437 Pa. at 566, 263 A.2d at 383.

The jury in the case before us opted to believe the testimony of the arresting officer, Payne, as opposed to that of the appellant. We agree with the lower court that there was sufficient evidence presented by the officer's testimony to prove appellant had either actual or constructive possession of the handgun in violation of the statute. Since we have concluded in the first issue that the Commonwealth was not required to call Dolfi and that the informant was equally available to both parties, appellant cannot complain that the Commonwealth's failure to call him prevented him from proving the defense of entrapment. Defense counsel could have subpoenaed Dolfi prior to trial or asked for a continuance of the trial until Dolfi could be located if his testimony had been that material. Neither of these steps was taken. The gun was found in appellant's apartment at which time he negotiated its sale. The jury did not believe the entrapment defense evidence as presented. Since they are the best arbiter of the credibility of the witnesses, and the record supports their conclusion, we find there was sufficient evidence to support their verdict.

Order of the lower court affirmed.

JACOBS, President Judge, concurs in the result.

HOFFMAN, J., did not participate in the consideration or decision of this case.