COMMONWEALTH *vs.* JOHN J. KELLEY.

Middlesex.    October 4, 1955. — November 4, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Receiving Stolen Property.*

A conviction upon a charge of receiving stolen money, knowing it to have been stolen, was warranted by evidence that fifty-four days after new bills were stolen in a bank robbery the defendant was in possession of some of the stolen bills, together with evidence of a voluntary reference to the robbery made by the defendant when interviewed by a Federal agent a few hours after its occurrence, of certain statements made by the defendant at the time when the bills were found in his possession, and of a refusal on his part at that time to tell where he had obtained the money, accompanied by the remark that the authorities could "think anything they want to." [193–195]

At the trial together of an indictment for receiving money stolen in a bank robbery, knowing it to have been stolen, on which the defendant was convicted, and an indictment of the same defendant for the

robbery, on which he was acquitted, there was no error in a charge to the jury permitting them to draw in each case an inference adverse to the defendant from his possession of some of the stolen money after the robbery and instructing them that he could not be convicted of both robbery and receiving. [195]

INDICTMENT, found and returned on June 8, 1954.

The case was tried in the Superior Court before *Hurley*, J.

*Julius H. Soble*, for the defendant.

*Ephraim Martin*, Assistant District Attorney, for the Commonwealth.

WILKINS, J.    The defendant appeals under G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended, from a conviction of receiving stolen goods. G. L. (Ter. Ed.) c. 266, § 60. The indictment sets forth that on or about April 1, 1954, the defendant received, or aided in the concealment of, "money of the amount and of the value of less than one hundred dollars the property of Harvard Trust Company . . . then lately before stolen . . . [the defendant] well knowing the said property to have been stolen." The defendant was tried at the same time on an indictment for robbery, and was acquitted.

The errors assigned are to the denial of the defendant's motion for a directed verdict, to the refusal of certain of his requests for instructions, and to the charge. He makes no question that money, consisting in part of new one dollar bills, had been stolen from the Harvard Trust Company, and that he received or obtained some of the new bills at some time. His contention is that he was not shown to have had knowledge that the new bills in his possession had been stolen.

The evidence tended to show the facts hereinafter set forth. On April 1, 1954, about 10:30 A.M. the Belmont branch of the Harvard Trust Company was held up by three masked and armed robbers, who stole $15,395 in currency. At the time a teller was counting a package containing one hundred new one dollar bills, which were numbered in sequence as delivered by the Federal Reserve Bank. The numbers were V74879101G through V74879200G. One

of the robbers scooped up part of the contents of the package leaving behind the bills with serial numbers ending from 179 through 200. At 2:05 P.M. on the same day an F.B.I. agent talked with the defendant at his place of business in Watertown. The defendant was a used car salesman. His first remarks were, "I know what you are here for, about that bank robbery." The agent asked how he learned about it. The defendant replied that during the latter part of the morning he had "dropped by" his house, which was also in Watertown, where he was told by his wife, who had received the information by telephone from her daughter, an employee of the Harvard Trust Company in Cambridge. The defendant denied any connection with the robbery, and gave an account of his whereabouts that morning, but said that he could not account specifically for his time between 10:15 A.M. and 10:45 A.M.

On May 24, 1954, the defendant, while at a race track, was interrogated by police officers. Asked to show his money, he produced $31, consisting in part of sixteen new one dollar bills which were part of the bills taken in the bank robbery and bore the numbers V74879110G to V74879118G, inclusive, and V74879123G to V74879129G, inclusive. During questioning by a police officer as to the source of the money the defendant said, "I can't explain it. I can't tell you where I got it." He also told that officer that he had had the bills for "some little time." To an F.B.I. agent the defendant later said that he could not say where he got the bills; that he had had the money approximately two weeks; and that he did not acquire it from his employment or from gambling. During the questioning by this agent the defendant said, "I won't tell you where the money came from," "I won't tell you where I got it and the F.B.I. can think anything they want to."

Possession of recently stolen property puts the burden of explanation upon one charged with having stolen it. *Commonwealth* v. *Montgomery,* 11 Met. 534, 537. *Commonwealth* v. *McGorty,* 114 Mass. 299, 302. *Commonwealth* v.

*Deegan,* 138 Mass. 182. *Commonwealth* v. *Taylor,* 210 Mass. 443. And the same principle applies to one charged with having received property, knowing it to have been stolen. *Commonwealth* v. *Peopcik,* 251 Mass. 369, 371. *Commonwealth* v. *Matheson,* 328 Mass. 371, 373. *Wilkerson* v. *United States,* 41 Fed. (2d) 654 (C. C. A. 7). *McAdams* v. *United States,* 74 Fed. (2d) 37, 41 (C. C. A. 8). *People* v. *Galbo,* 218 N. Y. 283, 290. Wigmore, Evidence (3d ed.) §§ 325, 327.

The defendant makes the contention that the lapse of fifty-four days between the robbery and the date of the defendant's proved possession is enough to take the case out of the rule. We cannot accept an argument, which is, in substance, that this period of time is, as matter of law, too long to permit the jury to draw an inference of guilty knowledge on the part of the defendant. There is much more here than mere unexplained possession of the stolen money. There was the voluntary reference to the robbery when the defendant was interviewed by the F.B.I. agent three and one half hours after the event. The asserted source of the defendant's knowledge and the purported account of his doings on that morning could be rejected. His statements after the sixteen new bills were found in his possession were not confined to a mere inability to tell how he came by them. They included a downright refusal to tell, accompanied by an express challenge to the law enforcement authorities to think the worst. The defendant does not refer to the latter statements in his brief, nor does he attempt discussion of the extremely damaging admission that he did not obtain the bills through his employment or by gambling, which were the only sources of the defendant's income contained in his testimony. The jury were entitled to find that if there had been any other and legitimate transaction, the defendant would have disclosed it. Such transactions would include a gift, a loan, a repayment of a loan, cashing a check, withdrawing money from a bank, a sale of some article not in the course of his business, or finding the money. The alternative finding that there was a dishonest transaction was clearly warranted, and the dishonest transaction could have

been found, beyond a reasonable doubt, to be the receipt of stolen goods, as charged in the indictment. That the goods consisted of new bills in two unbroken sequences of nine and seven, respectively, might have been considered by the jury to be an aid rather than a detriment in remembering the manner of their acquisition, as well as an indication that they had not been in circulation since April 1.

While it is not necessary to rely upon the fact, it is to be noted that by the defendant's admission he had had the money at least two weeks on May 24, or for "some little time," whatever the jury might find that to be on the evidence. Neither have we found it necessary to refer to testimony tending to place the defendant in the automobile in which the robbers escaped from the bank, or to recite evidence tending to show that a gun owned by the defendant was used in the commission of the robbery.

The defendant argues that no inference of guilty knowledge of receiving can be drawn from the possession of recently stolen goods where the defendant is simultaneously charged and tried for stealing the same goods. He also contends that in charging the jury that they could draw that inference in both the receiving and the robbery cases the judge led the jury into the field of surmise and conjecture. We cannot agree. The judge charged that the defendant could not receive from himself, and so could not be convicted both of robbery and of receiving. The jury evidently accepted the defendant's statements to the police officers and the F.B.I. agents, as well as his testimony, that he did not rob the bank. That left them free without any speculation whatsoever to return a verdict of guilty on the indictment for receiving.

There was no error in the denial of the motion for a directed verdict nor in the refusal of the defendant's requests for instructions numbered 3 and 13.[1] There likewise was

---

[1] 3. "There is no evidence that the defendant bought, received or aided in the concealment of the money alleged in the indictment, knowing it to have been stolen."

13. "The presumption of possession of goods recently stolen does not apply to this case and may not be considered by the jury."

no error in that portion of the charge excepted to. This assignment of error raises no new point.

*Judgment affirmed.*