Rockingham,
No. 5565.

STATE *v.* ARTHUR W. RUMNEY.

Argued January 6, 1967.
Decided February 24, 1967.

*George S. Pappagianis*, Attorney General and *R. Peter Shapiro*, Assistant Attorney General ( *Mr. Shapiro* orally ), for the State.

*Robert R. Renfro* ( by brief and orally ), for the defendant.

DUNCAN, J. In support of exceptions to the denial of motions for a directed verdict made at the close of the State's evidence and at the close of all of the evidence, the defendant maintains that the evidence was insufficient to warrant a finding of guilty beyond a reasonable doubt. The evidence established that a filling station owned by John Stef at 2219 Lafayette Road in Portsmouth was broken into at some time between closing time at 11:15 P. M. on December 10, 1965, and when it was reopened at 6:30 A. M. on the following day. Numerous items of merchandise consisting of cigars, cigarettes, camera supplies, canned goods and clothing kept for sale were missing, as were a television set, a pair of binoculars, and a collection of old coins. There was evidence that the articles taken would amount to " two wheelbarrows full. "

On January 22, 1966 Portsmouth police searched the residence of the defendant at 548 Broad Street pursuant to a search warrant, and found there numerous articles including old coins which the store owner identified at the trial as goods taken from his station on December 11, 1965. The State's evidence further disclosed that search of certain premises in Maine occupied by Kenneth Faucheux had produced items identified as having been taken in the burglary, and that Faucheux had been convicted of the offense.

The defendant took the stand on his own behalf, and was supported by the testimony of his wife in his assertion that he had been at home at all times on the night the offense was committed and that the goods found in his apartment in January had been brought there by Faucheux in the defendant's absence. The defendant denied participation in the burglary. He called Faucheux as a witness, and Faucheux testified that he alone was responsible for the break. He also corroborated the defendant's testimony that the goods received in evidence had been taken to the defendant's house by Faucheux. The latter's account of how he had transported the goods from the station without assistance, following the break was involved, confused and unconvincing.

There was evidence that in August 1964 Faucheux had been instrumental in introducing the defendant to the woman who became the defendant's wife in May 1965, and that he became acquainted with the defendant in State Prison in 1955 while both were serving time for prior offenses.

The defendant acknowledged that he had been in the filling station upon a single occasion in the summer of 1965, and while there had engaged in discussion of the old coins with the proprietor's nephew. He testified that a can of spaghetti identified as having come from the store could have been purchased by him at that time, but also testified "we didn't eat spaghetti . . . I didn't say definitely I did purchase it." He conceded that on January 22, 1965 he had learned while at work that his home and a house at 160 Wibird Street were both being searched by police, and that he had then gone·to the latter address "to see Mrs. Stickney," where police took him into custody.

The defendant rests his argument upon the proposition that the evidence of his possession of the stolen goods fell short of showing such "recent" and "exclusive" possession as to warrant a finding of guilt in the face of his explanation of how that possession came about.

While possession of stolen goods gives rise to no legal presumption of guilt (*State* v. *Hodge*, 50 N. H. 510), it is evidence from which guilt may be inferred as a matter of fact. *Id.*, 517; *State* v. *Amero*, 106 N. H. 134; *State* v. *Gobin*, 96 N. H. 220; 1 Wigmore, Evidence (3d *ed.*) *s*. 152. The inference is one which can be overcome by credible explanation of the fact of possession, but the question of "whether, in view of [the defendant's] conduct before and after the burglary, his possession of the stolen property was 'recent enough, or exclusive enough, or unexplained enough' to warrant a conviction was a question of fact for the jury." *State* v. *LaVerne*, 83 N. H. 419, 420. See also, *State* v. *Mihoy*, 98 N. H. 38; *State* v. *Fogg*, 92 N. H. 308, 310; *Cason* v. *State*, 230 Md. 356.

The burglary was established by independent evidence. The jury were not compelled to accept the defendant's evidence offered in explanation of his possession of the stolen goods. If this evidence was disbelieved as the verdict indicated, the evidence of possession was sufficient to support a finding beyond a reasonable doubt that the defendant participated in the crime of burglary. *State* v. *Mihoy*, 98 N. H. 38. See 3 Underhill's Criminal Evidence (5th *ed.*) *s*. 723.

*Exceptions overruled.*

All concurred.