The UNITED STATES of America,
Appellee,

v.

Robert Stanley KOMPINSKI and George Harold Evanco, Appellants.

Nos. 228, 229, Dockets 30560, 30562.

United States Court of Appeals
Second Circuit.

Argued Nov. 17, 1966.

Decided Feb. 24, 1967.

Edward K. O'Shea, Buffalo, N. Y., for appellant Kompinski.

Harold J. Boreanaz, Buffalo, N. Y., for appellant Evanco.

John T. Curtin, U. S. Atty. for the Western District of New York, Buffalo, N. Y., for appellee.

Before WATERMAN, MOORE and HAYS, Circuit Judges.

MOORE, Circuit Judge:

This case involves an alleged conspiracy to steal automobiles in Illinois, transport them to and sell them in the State of New York.

The indictment consisted of: (a) 20 counts charging the appellant, Robert Stanley Kompinski (Kompinski), with receiving and concealing 20 specific automobiles moving in interstate commerce and known by him to be stolen, in violation of 18 U.S.C. § 2313; (b) 1 count charging appellant, George Harold Evanco (Evanco), with receiving and concealing one automobile in violation of 18 U.S.C. § 2313; (c) several substantive counts against defendants Burns, Jones, and Pelligrini; and (d) a conspiracy count alleging that all the defendants, plus co-conspirators O'Connell and Timm, conspired from July 14, 1964 to October 30, 1964, to steal autos in Illinois, and transport them in interstate commerce for receipt and disposal, in violation of 18 U.S.C. § 371.

The parties stipulated that all of the vehicles were stolen in and around Chicago, Illinois. Evidence was introduced concerning ten of the thefts. Jones, O'Connell and Timm stole the cars and identification tags from the doors of similar vehicles. Burns, who appears to have been the head of this branch of the operation at least, would provide the appropriate Indiana indicia of ownership, and the cars would be transported to the environs of Buffalo, New York.

All twenty of the cars were sold in Lackawanna, New York, near Buffalo, by Parkette Motors, a used car business operated by Kompinski. Kompinski's business records show that he received all of the cars shortly after they were stolen, often within one or two days after the theft.

The only connection suggested by the government between Burns and Kompinski was through George Evanco. He was acquainted with Burns, and had visited him in Chicago. There was evidence of frequent communication by telephone between Burns and Evanco during the period of the conspiracy. Evanco had also obtained one of the stolen cars mentioned in the indictment from Kompinski on the same day that Kompinski received it. Further, Jones, testifying for the government, claimed that he saw Evanco enter one of the stolen cars in front of Burns' office in Chicago and drive off, shortly before this car was delivered to Kompinski.

Before trial, defendant Jones pleaded guilty to two counts, and the remaining counts against him were severed. He appeared as a witness for the government. Defendant Pelligrini was acquitted, and the other defendants were convicted on the relevant counts. Since defendant Burns failed to perfect his appeal, only the causes of Kompinski and Evanco are before this court.

*Kompinski's Appeal*

1. During the course of the trial, the government called as a witness, Lee Mason Eidson, the special agent who had arrested Kompinski. After Eidson had identified Kompinski as the man that he had arrested, defense counsel moved for a preliminary hearing outside the presence of the jury. The motion was granted, the jury withdrew, and Eidson resumed his testimony, recalling a conversation he had had with Kompinski at the time of the arrest.

■ Edison testified that Kompinski said he had gotten the cars from a man named "George" (whose physical description matched that of the defendant George Evanco). Kompinski also admitted that he knew Evanco, but denied that it was Evanco from whom he had received the cars. Since this was a post-conspiratorial statement, and hearsay, it was inadmissible against Evanco. When Evanco's counsel and the court expressed concern over the propriety of its admission even with limiting instructions, the government withdrew its offer of proof of any statements made to Eidson by Kompinski.

However, counsel for Kompinski objected to the withdrawal of the testimony on the grounds that it was not prejudicial to Evanco, that it tended to establish Kompinski's innocence, and that Kompinski should not have to call Eidson because it shifted the burden of proof to the defendant.

■■ The short answer to this claim is that the government is under no obligation to prove a defendant's case, or to call a witness to testify simply because the testimony may be helpful to the defense. Deaver v. United States, 81 U.S.App.D.C. 148, 155 F.2d 740, 744, cert. den., 329 U.S. 766, 67 S.Ct. 121, 91 L.Ed. 659 (1946). Furthermore, Kompinski has not shown that he was prejudiced by the government's decision not to have Eidson testify. Eidson remained available as a witness. It is unlikely that Kompinski really felt the testimony would have been helpful because he made no attempt to call Eidson to testify. This did not shift the burden of proof to the defendant. The charge to the jury on burden of proof was correct and no objection thereto was taken.

■ 2. Kompinski claims that the evidence was insufficient to support his conviction on either the substantive counts or the conspiracy count because it failed to show that he knew that the cars were stolen or that a conspiracy existed. A review of the record reveals these contentions to be without merit.

■ Kompinski came into possession of the twenty stolen cars shortly after the thefts. Unless explained, this recent possession was sufficient, standing alone, to support verdicts of guilty on all the substantive counts. United States v. Lefkowitz, 284 F.2d 310, 313 (2d Cir. 1960). Kompinski relies on the Indiana title certificates, purporting to show his purchase of the cars from Indiana owners, as an explanation of his possession. The record not only discredits this explanation but provides a basis for affirmative findings that Kompinski knew that the cars were stolen and that a conspiracy existed.

At least ten of the title certificates were the fraudulent certificates allegedly prepared by Burns naming fictitious owners. The jury could have concluded that Kompinski was aware that the certificates were fraudulent from the fact that one of them showed that he purchased the car three days before it was stolen, and another that he purchased the car months before it was stolen. Further, the sales, within three months in 1964, of sixteen 1964 Buicks, Cadillacs, and Oldsmobiles coming from owners in Gary, Indiana, constituted a radical and obvious change in the course of Kompinski's business, particularly since Kompinski had purchased very few cars from out of state prior to the period of the conspiracy, and none from Indiana. This evidence was sufficient for the jury to conclude that Kompinski knew that the cars were stolen and that

a conspiracy was in existence. The title certificates show that he must have purchased at least ten of the cars from a member or members of the conpiracy, evidencing his willing participation in it.

*Evanco's Appeal*

■ 1. In an effort to solidify the case against Burns, and establish Evanco's membership in the conspiracy, the government introduced records of certain telephone numbers, to which Burns and Evanco had access, showing calls between the Chicago and Buffalo areas. Evanco alludes to some "unbelievable" errors relative to the admission of this evidence. However, he fails to urge any specific grounds for their inadmissibility. Our review of the record reveals no error in the admission of this proof.

■ 2. Evanco objects, more specifically, to the admission of the testimony of Marie Judge that Evanco frequently visited the home of her next door neighbor in Buffalo, one Mary Macey. Mary Macey was referred to several times as Mrs. Macey, and a defense exhibit showed that Evanco was a married man.

Mrs. Judge's testimony had some probative value, showing that Evanco had access to the Macey phone through which he had received a call from a Chicago phone available to Burns. The trial Judge, in his discretion, felt that the probative value of the evidence outweighed the possible prejudice to Evanco which might arise through any inferences as to the nature of his relationship with Mary Macey. The record is clear that no such inferences were suggested to the jury. We find no error in the admission of Mrs. Judge's testimony.

3. It was necessary to have Mrs. Judge testify concerning Evanco's access to the Macey phone, because the government knew Mary Macey would refuse to testify on Fifth Amendment grounds (she had so refused before the grand jury). Subsequently, Mary Macey was called as a witness, while the jury was not present, for the sole purpose of es-tablishing that she would refuse to testify, thereby foreclosing defense comments on the government's failure to call her as a witness. Defense counsel had offered to stipulate that she would not testify, but did not object when the court decided to call her to the stand to remove all doubt. Shortly thereafter, an article appeared in the local newspaper revealing that she had refused to testify on the grounds that it might incriminate her. As a result of this, Evanco's counsel moved for a mistrial, asserting that the publicity had deprived Evanco of his right to a fair trial. After polling the jury, and receiving assurances that no one had read any articles or had any discussions concerning the case, the judge denied the motion for a mistrial. Evanco excepted.

■ A motion for mistrial is addressed to the sound discretion of the trial judge. United States v. Cioffi, 242 F.2d 473 (2d Cir.), cert. denied, 354 U.S. 957, 77 S.Ct. 1060, 1 L.Ed.2d 1137 (1957). The trial judge repeatedly warned the jury not to read anything about the case, or to discuss it with anyone. When the jury was polled, it was established that none of the jurors had seen the article or talked about the case. We find no evidence of prejudice to Evanco, and no error in the denial of the motion for a mistrial. United States v. La Barbara, 273 F.2d 547 (2d Cir. 1960).

4. Evanco also claims that the evidence was insufficient to support his conviction on either the substantive count or the conspiracy count. We disagree.

Evanco was charged in Count 30 with "receiving and concealing a stolen motor vehicle which was moving as interstate commerce, knowing the same to have been stolen." In support of this charge, the government introduced testimony that on October 23, 1964, Evanco was in possession of a 1964 Oldsmobile. It was stipulated that this car had been stolen in Chicago on October 7, 1964 by persons unknown. The car had been

received by Kompinski on October 23rd, and transferred to George Evanco.

To prove that Evanco knew the car was stolen, the government relied mainly on circumstantial evidence introduced to establish Evanco's participation in the conspiracy charged in Count 31. Evanco claims that the evidence was insufficient to prove either that he knew the car he obtained from Kompinski was stolen or that he even knew a conspiracy existed.

The government introduced evidence that Evanco was in communication with Burns during the period of the conspiracy. Records of the Illinois Bell Telephone Company revealed seven calls between July 23, 1964 and September 25, 1964 from phones available to Burns in Chicago to Evanco's home phone in Buffalo. They also showed one call from an unidentified Chicago phone (billed to a phone available to Burns) to the home phone of Mrs. Mary Macey in Buffalo. (Evidence had previously been introduced to show that Evanco was a frequent visitor at Mary Macey's home.)

Evidence was also introduced showing that Evanco had been in Chicago and visited Burns in mid-October, 1964. The records of the LaSalle Hotel in Chicago established that a George Evanco had been registered there on October 18 and 19, 1964.

These activities were tied to the conspiracy through the testimony of the severed defendant, William Jones. He testified that he had seen Evanco in Chicago around the 18th of October, 1964. Jones, according to his testimony, and O'Connell had just delivered a Buick convertible (which O'Connell had stolen) in front of Burns' office pursuant to Burns' instructions. Jones then watched the car until he saw three men get into it and drive off. He was able to identify one of the men as someone he knew, the second as an associate of Burns that he had seen before, and the third as Evanco. (Jones claimed it was the only time he had seen Evanco, and didn't know his name.) This stolen Buick was received by Kompinski two days later in Buffalo, on October 20, 1964. Three days after that, Evanco came into possession of the stolen car for which he was indicted, shortly after Kompinski had received it.

Jones also testified that he had a conversation with Burns on Thursday or Friday, the record indicating that the dates would have been September 10th or 11th, 1964. The substance of the conversation was that a car had to be stolen and delivered to Buffalo for that weekend. Jones informed co-conspirators Timm and O'Connell, who then "picked up" a Cadillac and started for Buffalo followed by Jones in a rented car. Timm and O'Connell were stopped by the police and questioned about the car. Thus, the delivery was never made. Later that day, Jones spoke to Burns in the latter's office. This probably would have been Friday evening, September 11th, 1964. At that time, Burns said that he had to call Buffalo right away to explain why the delivery could not be made.

While Jones could not recall whether he witnessed Burns' call to Buffalo, the records of the Illinois Bell Telephone Company showed that one call was made to Buffalo on September 11, 1964 from Burns' home phone, and one on September 11, 1964, from Burns' office phone. Both calls were to George Evanco's home phone number. There is no evidence of any other phone calls to Buffalo at that time by Burns.

Jones had also testified that it was at the end of August, 1964, that the theft ring, allegedly headed by Burns (who told Jones he had a "contact" in New York) began operations. The first two cars were stolen on September 1, 1964 (one may have been stolen on August 31, 1964) and delivered in Buffalo on September 2, 1964. The records of the Illinois Bell Telephone Company show a call on September 1, 1964 to Evanco's home phone from an unidentified number in Chicago, billed to Burns' office phone, from a man named Burns. There was also a call from a Chicago phone Burns made use of to the Evanco home number on September 2, 1964. Jones' testimony

placed Burns in Buffalo on September 2, 1964.

Four more cars were stolen on, respectively, September 21st, 22nd or 23rd, 23rd and 26th, 1964. There is no evidence other than Kompinski's fictitious source of ownership slips as to when these cars were delivered to Kompinski. On September 25, 1964, there was a phone call to Evanco's home phone from a phone in Chicago, billed to a number Burns had access to. Shortly thereafter, September 27th to 29th, 1964, Burns was registered in a hotel in Buffalo.

 Evanco introduced evidence that he and Burns had legitimate business purposes for communicating, and attacked the credibility of Jones. On appeal, we are bound to view the evidence in the light most favorable to the government, United States v. Kahaner, 317 F.2d 459, 467 (2d Cir.), cert. denied, 375 U.S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65 (1963), and this included accepting the jury's favorable assessment of Jones' credibility.

 Further, since Evanco cannot be found guilty merely by association, we presume that any contacts between Burns and Evanco were innocent unless the circumstances indicate otherwise. Thus, while the fact that they had an identifiable, verifiable, legitimate purpose for communicating is a circumstance supporting the assumption of the innocence of their contacts, it does not preclude the possibility that there were other, less admirable purposes at the same time, and the facts that Burns was the key man in the theft ring, that Burns called Evanco in Buffalo the same day Burns was heard to say that he had to call Buffalo to explain why the stolen cars would not be delivered, that the timing of the contacts and the deliveries of stolen cars coincided are all facts which tend to overcome the presumption of innocence.

Finally, the jury considered the circumstances surrounding Evanco's possession of the stolen car mentioned in Count 30. While he was seen in posses-sion of the car on October 23, 1964 (the same day that Kompinski received it), he did not finance the "purchase" of it until December 31, 1964. Within a week after that, the car was returned to Kompinski, exchanged for another, older car of the same make which was not stolen.

The trial judge carefully considered whether to send the case against Evanco to the jury. The relevant instructions were correct and unobjected to. We feel that the evidence summarized above justified the jury in finding that Evanco knew of the conspiracy and was a member of it, that he knew Kompinski sold stolen cars, and that he knew that the car he received was a stolen car.

Thus, we affirm both convictions.