### FITZGERALD LEWIS SMITH *v.* STATE OF MARYLAND

[No. 20, September Term, 1969.]
*Decided November 20, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*James W. Murphy* for appellant.

*T. Joseph Touhey, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Arthur S. Alperstein, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Fitzgerald Lewis Smith, the appellant, was convicted of larceny in a court trial in the Criminal Court of Baltimore. Smith received a suspended sentence of eighteen months. On this appeal he contends the evidence was insufficient to support his conviction. We agree.

The record indicates that on Sunday, May 26, 1968, the home of one Abraham Brown was broken into. Among the items taken were a stereo record player and two lamps. The next day, May 27, 1968, Willis Brown, a brother of the victim and familiar with his possessions, was approached in a bar by Edward Graham, a codefendant, and asked if he, Brown, wanted to buy some

items from a friend of Graham's. It is disputed whether Graham offered to sell the stereo alone or the stereo plus the lamps. In any case, Smith was not present during any of these conversations and, while testifying, Smith denied that Graham was selling the items as his agent. Willis Brown, suspecting the items for sale to be his brother's, went with Graham to 1811 East Eager Street, the home of Grace Tate, another co-defendant, to inspect the merchandise.

As to how the stolen items got into the Tate apartment, there is a conflict of testimony. Graham testified that Smith purchased the goods from two youths in the neighborhood and being immediately dissatisfied with his purchase, Smith had asked Graham to sell the items for him. Graham also testified that he, Smith, and the two youths all helped carry the stereo into Tate's apartment. Smith, in his testimony, denied being with Graham at the time of purchase, helping to take the stereo to Tate's apartment, having any conversation relative to the stereo, or having any control over it. Smith claims the first time he saw the stereo was on Monday, May 27. Grace Tate testified that Graham and the two youths brought the stereo to her apartment, claiming that Graham had been evicted and needed a place to store his belongings. She testified that Smith was not with Graham when the stereo was deposited at her apartment.

However the stolen items got to Miss Tate's, Willis Brown testified that he did in fact see the stereo and two lamps there and recognized them as belonging to his brother. He agreed to buy the items but said he had to go home for more money. Grace Tate was present at the time of that conversation, but the appellant, Smith, was not present.

Willis Brown reported his discovery to the police and a search warrant was issued for the apartment at 1811 East Eager Street. The police executed the warrant on May 29, 1968, three days after the robbery and two days after the visit of Willis Brown to the East Eager Street address. Upon arriving at 1811 East Eager Street, the

police were met by Betty Smith, appellant's wife. Also present were Smith and the sick child of Grace Tate. Although the police officer testified that one of the Smiths responded that they lived at 1811 East Eager Street, on cross-examination, the officer stated that the police did later determine that the Smiths did not live at 1811 East Eager Street, but rather lived at 941 Rutland Avenue. Appellant Smith denied that he or his wife had said they lived at the East Eager Street address. At the time the police searched the Tate premises, Smith denied that the stereo and lamps were his. The prosecution presented no further evidence against appellant Smith.

By way of positive explanation for Smith's presence at the home of Grace Tate at the time the police arrived, Smith testified: Tate is the cousin of his wife; the Smiths visit Miss Tate frequently and on this particular occasion Mrs. Smith had gone to babysit for Tate's sick child while she went to work. Smith then joined his wife at the Tate residence, taking with him some paper work connected with his confectionary business. The police asked Smith if there was a stereo in the apartment; whereupon, Smith said there was one in the dining room.

At the trial, all codefendants testified plus Mrs. Smith, appellant's wife. For the prosecution both Abraham and Willis Brown testified as did the police officer who executed the search warrant.

It appears the trial judge applied the rule that absent a satisfactory explanation, exclusive possession of recently stolen goods permits the drawing of an inference of fact the possessor was the thief or the receiver. *Gamble v. State,* 2 Md. App. 271, 234 A. 2d 158. The drawing of such inferences of fact is clearly permissible under Maryland law, provided a proper factual background exists for the inference, and we do not question the validity of the rule permitting such inferences. For further discussion of the permissible inferences, see *Polansky v. State,* 205 Md. 362, 109 A. 2d 52; *McGlothlin v. State,* 1 Md. App. 256, 229 A. 2d 428; *Boswell and Poe*

*v. State,* 5 Md. App. 571, 249 A. 2d 490; and *Carroll v. State,* 6 Md. App. 647, 252 A. 2d 496.

The decision to infer guilt from possession of recently stolen goods is a solution to only half of the problem. It is equally important to decide whether the crime to be inferred is larceny or receiving stolen goods.[1] See *Jordan v. State,* 219 Md. 36, 148 A. 2d 292; *Anglin v. State,* 244 Md. 652, 224 A. 2d 668; and *Grimes v. State,* 4 Md. App. 607, 244 A. 2d 456.

In deciding which crime may be properly inferred, the court is controlled by the facts and may only draw inferences supported by the facts. *Anglin v. State, supra.* In the case at bar the trial judge did not indicate what testimony he believed or disbelieved, but if he believed all evidence which was hostile to appellant Smith, the larceny conviction was still improper. Only two witnesses directly implicated him; first, the police officer who executed the search and seizure warrant on the premises at 1811 East Eager Street and, second, co-defendant Edward Graham. The policeman testified at the time the warrant was executed, defendant and his wife were on the premises with a sick child. The premises were not the defendant's. It appears that appellant was arrested merely on the basis of his fortuitous presence in another's apartment at the time the warrant was executed.

Graham testified Smith was involved in the dealings with the stereo, and the involvement consisted of the purchase of the stereo from two youths. These two points in Graham's testimony are so interwoven that it is impossible to separate them; hence, to accept the truthfulness of one point requires the acceptance of the truthfulness of the other point. Clearly then, the testimony of Graham makes Smith at most a receiver of stolen goods. Nothing in Graham's testimony, in any way, indicates that Smith was the thief; therefore, this Court concludes that the larceny conviction cannot stand. The trial judge

---

1. We are not here concerned with the problem of inferring burglary, etc.

was aware of the meagerness of the evidence against Smith when he said "Certainly, the evidence was weakest as to him (Smith)."

This Court does not consider what the result would have been had Smith been convicted of receiving stolen goods instead of larceny. Although the evidence more strongly supports the receiving charge rather than the larceny charge, the conviction was on the larceny count and that is the only one we review; the acquittal on the receiving count makes that question moot.

While it appears unlikely that additional probative evidence is available to the State, there is still the possibility that such additional evidence exists and was not presented at the trial for whatever reason; thus, this Court cannot say with adequate certainty whether additional probative evidence is available or not. Therefore, upon remand, the State will bear the burden of demonstrating to the satisfaction of the lower court that it can produce additional probative evidence showing Smith to be guilty of larceny. This evidence must be presented within thirty days from receipt of the mandate or within such extension of time, for good cause shown, as may be authorized by the lower court. If the lower court is so satisfied with the demonstration of the State, it shall hold a new trial; if the lower court is not satisfied it shall enter a judgment of acquittal. See *Gray v. State,* 254 Md. 385, 255 A. 2d 5.

> *Judgment reversed; case remanded for further proceedings in accordance with this opinion.*
>
> *Costs to be paid by the Mayor and City Council of Baltimore City.*