Commonwealth *v.* Owens, Appellant.

Argued May 6, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

320

*Michael A. Donadee,* for appellant.

*Carol Mary Los,* Assistant District Attorney, with her *Robert L. Campbell,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, November 12, 1970:

It has been the law in the criminal courts of Pennsylvania that a defendant's unexplained possession of recently stolen goods is sufficient proof of his guilt of the crime of receiving stolen goods. Although the statute defining that crime provides as an express element that the defendant knew or had reason to know that the goods in question had been stolen,[1] it has been reasoned that such scienter may be presumed from evidence of mere possession. *Commonwealth v. Pittman,* 179 Pa. Superior Ct. 645, 118 A. 2d 214 (1955) ; *Commonwealth v. Kaufman,* 179 Pa. Superior Ct. 247, 116

---

[1] Act of June 24, 1939, P. L. 872, §817, as amended, May 21, 1943, P. L. 306, §1, 18 P.S. §4817.

A. 2d 316 (1955) ; *Commonwealth v. Joyce*, 159 Pa. Superior Ct. 45, 46 A. 2d 529 (1946). We have in the past made reference to this doctrine but have never formally sanctioned it. *Commonwealth ex rel. Chatary v. Nailon*, 416 Pa. 280, 283-84, 206 A. 2d 43, 45 (1965) (dictum).

This case raises a serious question as to the continuing validity of this presumption in light of the United States Supreme Court's recent decisions in *Leary v. United States*, 395 U.S. 6, 89 S. Ct. 1532 (1969), and *Turner v. United States*, 396 U.S. 398, 90 S. Ct. 642 (1970).

The appellant Owens after trial without a jury was adjudged guilty of receiving stolen goods and sentenced to a term of three years imprisonment. He then filed a motion for new trial which was eventually dismissed for failure to proceed. On November 1, 1967, appellant filed an application to reinstate his motion for new trial and for leave to file a motion for arrest of judgment *nunc pro tunc*. The application was granted but the motions subsequently denied on their merits on February 11, 1969. The Superior Court affirmed per curiam. We granted allocatur and this appeal followed.

The evidence presented at appellant's trial, viewed in the light most favorable to the prosecution, established the following:

At approximately 11:10 P.M on the evening of January 31, 1967, Dr. Dick Kazin parked and left his automobile on Craft Avenue in the Oakland section of Pittsburgh. Upon returning to the car some twenty minutes later, he discovered one the car's front windows broken and three handguns and two snow tires missing from within.

On February 19, 1967, Lieutenant O'Connell of the Pittsburgh police force went to the grocery store of one Earl Harris armed with a search warrant seeking con-

traband moonshine whiskey. Not only did the search for the moonshine prove fruitful, but O'Connell also found one of the pistols that had been stolen from Kazin less than three weeks earlier. At appellant's trial Harris testified that he had purchased the pistol from appellant for a total price of $30, paying $20 in cash with a balance of $10. In partial corroboration of this story Harris' wife Velma testified that appellant had come into the grocery store seeking payment of the $10 balance and attempting to sell a second pistol which he showed to her at that time.[2] Velma Harris admitted, however, that appellant had offered no clue as to how he had come into possession of either of the weapons.

The foregoing is the sum of the prosecution's case.

Appellant testified in his own behalf and admitted having met Harris in prison many years earlier and having seen him on the street several times in the subsequent years. However, he denied any connection with the stolen gun or its sale or attempted sale to Harris. He further denied all of Velma Harris' testimony concerning his supposed demand for a $10 balance and attempt to sell a second gun.

The trier of fact was of course free to credit the testimony of Earl and Velma Harris and to disbelieve that of appellant, but the former established at most only that appellant possessed a stolen pistol at some time less than three weeks after its theft.[3] Thus the presumption of guilty knowledge is the sole basis upon which appellant's conviction can rest, and it is to an assessment of this presumption that we must turn.

---

[2] There is nothing in the record indicating that this second pistol was one of the stolen ones.

[3] As set out above, the pistol was stolen on January 31 and recovered from Harris on February 19. Harris did not testify as to when he acquired the weapon from appellant.

The general teaching of *Leary* and *Turner* is that a criminal presumption is unconstitutional "unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." 395 U.S. at 36, 89 S. Ct. at 1548 (footnote omitted).[4]

*Leary* reversed a conviction for the possession of marihuana knowing the same to have been illegally imported, by invalidating the statutory presumption that such knowledge may be presumed from evidence of mere possession. 21 U.S.C. §176(a). The Court admitted that information concerning the factual accuracy of the presumption was " 'not within specialized judicial competence or completely commonplace,' " and that significant weight should be accorded to Congress's presumed investigation as to the soundness of the presumption. Nevertheless, in the absence of an actual legislative record documenting the accuracy of the presumption, the Court felt free to and did survey other available data on the subject. From such a survey the Court was willing to assume that the majority of marihuana consumed in the United States was illegally imported but deemed this an insufficient basis for concluding that "a majority of marihuana possessors either are cognizant of the apparently high rate of importation or otherwise have become aware that *their* marihuana was grown abroad." 395 U.S. at 46-47, 89 S. Ct. at 1553-54 (emphasis in original).

*Turner* dealt with an almost identical knowledge presumption concerning possession of cocaine and heroin. The Court struck down the presumption as applied

---

[4] In both *Leary* and *Turner*, the Court pointedly referred to the possibility that due process might require that a criminal presumption be factually accurate beyond a reasonable doubt. 395 U.S. at 36 n. 64, 89 S. Ct. at 1548 n. 64; 396 U.S. at 405, 90 S. Ct. at 646. The present case does not require our reaching this issue.

to cocaine on the basis of its finding that large amounts of coca leaves, the raw material from which cocaine is derived, are legally imported for medicinal purposes. Respecting heroin, however, the Court sustained the presumption in light of evidence that virtually all domestically consumed heroin is illegally imported and that this fact concerning the source of heroin is not only widely and popularly known but especially known to those who traffic in the drug, "unless they practice a studied ignorance to which they are not entitled." 396 U.S. at 416-17, 90 S. Ct. at 652-53 (footnote omitted).

The "more likely than not" test coupled with the examples provided by *Leary* and *Turner* as to how that test should be applied in a given case leave us with little doubt that the knowledge presumption concerning receipt of stolen goods is constitutionally infirm, at least as applied to the circumstances of this case, and we so hold. We reiterate that there is nothing whatever in the record touching upon how appellant originally came into possession of the stolen pistol, and the possibilities of innocent acquisition seem myriad: a gift, payment for services rendered, payment of a debt, purchase from a seemingly reputable dealer in used guns. The only empirical data furnished to us by either party casts considerable doubt upon the probable factual strength of the knowledge presumption. A staff report submitted to the National Commission on the Causes and Prevention of Violence: Firearms and Violence in American Life, ch. 3, at 13-15, estimates that there were 24,000,000 handguns in the United States in 1968, that 54% of all handguns acquired in 1968 were sold used, and that among low income groups 71% of all used firearms were obtained from a friend or a private party. While these figures do not enable us to construct with any degree of accuracy the

relative percentages of transfers of stolen and non-stolen guns, they nevertheless do indicate the probability that substantial numbers of used guns are transferred in seemingly innocent circumstances.

Nor is the Commonwealth's position in this case enhanced by the fact that appellant's possession of the stolen weapon was "unexplained".

"The [United States Supreme] Court has also refused to accept the suggestion that since the source of his drugs is perhaps more within the defendant's knowledge than the Government's, it violates no rights of the defendant to permit conviction based on possession alone when the defendant refuses to demonstrate a legal source for his drugs. Leary v. United States, *supra,* 395 U.S. at 32-34, 89 S. Ct., at 1546-1547. See also Tot v. United States, *supra,* 319 U.S. at 469-470, 63 S. Ct., at 1245-1246. The difficulties with the suggested approach are obvious: if the Government proves *only* possession and if possession is itself *insufficient evidence* of either importation or knowledge, but the statute nevertheless permits conviction where the defendant chooses not to explain, *the Government is clearly relieved of its obligation to prove its case, unaided by the defendant,* and the defendant is made to understand that if he fails to explain he can be convicted on less than sufficient evidence to constitute a prima facie case. See Tot v. United States, *supra,* 319 U.S. at 469, 63 S. Ct., at 1245." *Turner v. United States,* 396 U.S. at 408 n. 8, 90 S. Ct. at 648 n. 8 (1970) (emphasis added).

In response, the Commonwealth urges that the wisdom of common experience suffices to demonstrate that a possessor of a recently stolen pistol more likely than not knew or had reason to know that the weapon had been stolen. We fear, however, that the Commonwealth attributes to us and demands of us not merely

a sensitivity to the dictates of common experience but a degree of clairvoyance which we do not and shall never possess.

Finally, the argument might be advanced that a criminal presumption ought to be presumed factually sufficient, i.e., that the burden should fall upon its challenger to marshall and present substantial empirical data indicating a probability of less likely than not. Such an approach might have some appeal in the case of a *statutory* presumption where " 'significant weight should be accorded the capacity of . . . [the legislature] to amass the stuff of actual experience and cull conclusions from it.' " 395 U.S. at 38, 89 S. Ct. at 1549. Involved here, however, is a *judicially* created presumption; there has been no legislative investigation and determination of its factual basis, and, accordingly, there is no basis to invest it with any presumptive merit.

As stated above, this Court has never ruled on the knowledge presumption, and the weight of authority appears to have rejected it.[5] Although this does not bear directly upon our constitutional conclusion, we merely wish to note that today's decision disturbs neither a deeply engrained nor universal principle.

Other issues raised by appellant need not be discussed.

The order of the Superior Court is reversed and the motion in arrest of judgment is granted and the judgment of sentence is vacated.

---

[5] See Annot., 68 A.L.R. 187 (1930), as supplemented. Compare, e.g., *State v. Woods*, 434 S.W. 2d 465, 467 (Mo. 1968) ; *State v. Long*, 243 Ore. 561, 564-65, 415 P. 2d 171, 173 (1966) ; *Pollan v. State*, 157 Tex. Crim. 178, 181, 247 S. W. 2d 889, 891 (1952) (rejecting presumption), with *Buckley v. State*, 2 Md. App. 508, 235 A. 2d 754, 757 (1967) ; *People v. Everett*, 10 N.Y. 2d 500, 225 N.Y.S. 2d 193, 180 N.E. 2d 556 (1962) (accepting presumption).

Mr. Justice EAGEN concurs in the result.

Mr. Justice POMEROY dissents.

___

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

Defendant was tried on June 12, 1967, without a jury, and was found guilty of receiving stolen goods and sentenced to three years' imprisonment. Defendant's motion for arrest of judgment and a discharge, or in the alternative a new trial, was denied by the lower Court. The Superior Court affirmed, per curiam, and we granted allocatur.

Considering defendant's motion for arrest of judgment, the evidence presented at defendant's trial, viewed, as it must be, in the light most favorable to the Commonwealth—*Commonwealth v. Schmidt*, 437 Pa. 563, 263 A. 2d 382; *Commonwealth v. Commander*, 436 Pa. 532, 260 A. 2d 773; *Commonwealth v. Rightnour*, 435 Pa. 104, 253 A. 2d 644; *Commonwealth v. Frye*, 433 Pa. 473, 252 A. 2d 580; *Commonwealth v. Tabb*, 417 Pa. 13, 16, 207 A. 2d 884; *Commonwealth v. Finnie*, 415 Pa. 166, 202 A. 2d 85; *Commonwealth v. Burns*, 409 Pa. 619, 634, 187 A. 2d 552—established the following.

At approximately 11:10 P.M. on January 31, 1967, Dr. Dick Kazin's automobile was broken into and three pistols and two snow tires were stolen. On February 19, 1967, Lieutenant O'Connell went to Earl Harris's grocery store armed with a search warrant. He found, inter alia, one of the pistols which had been stolen from Dr. Kazin's car less than three weeks earlier. At defendant's trial, Harris testified that he had purchased the pistol from defendant for a price of $30, paying $20 in cash and agreeing to pay the balance of $10 at an indefinite future time. Harris's wife, Velma, corroborated a part of Harris's testimony when she testified that defendant had come into her husband's gro-

cery store to obtain the $10 balance due him, at which time he attempted to sell Harris a second pistol, which he showed her.

Defendant admitted having met Harris in prison many years earlier and having seen him on the street several times in the subsequent years. However, he denied he had ever possessed the stolen pistol or its sale to Harris, and he likewise denied Velma's testimony.

It has been the long and well established law of Pennsylvania that possession of recently stolen property raises a presumption of knowledge that the property had been stolen. *Commonwealth ex rel. Chatary v. Nailon,* 416 Pa. 280, 283-284, 206 A. 2d 43, 45; *Commonwealth v. Newman,* 276 Pa. 534, 539, 540, 120 Atl. 474; *Commonwealth v. Pittman,* 179 Pa. Superior Ct. 645, 118 A. 2d 214; *Commonwealth v. Kaufman,* 179 Pa. Superior Ct. 247, 116 A. 2d 316; *Commonwealth v. Joyce,* 159 Pa. Superior Ct. 45, 46 A. 2d 529.

In *Commonwealth ex rel. Chatary v. Nailon,* 416 Pa., supra, the Court* said (pages 283-284) : "It is . . . well established that unexplained possession in the defendant of property recently stolen is evidence that he is the thief.** . . ."

In *Commonwealth v. Newman,* 276 Pa., supra, Chief Justice MOSCHZISKER, speaking for a unanimous Court said (pages 539, 540) : "In charging the jury as to the legal effect of possession of stolen property, the court said: 'Where property has been stolen and is speedily found in the possession of some one, the law puts upon him the burden of its explanation. Otherwise, he is deemed to have been the thief. The law does not fix

---

* The present Chief Justice dissented because of disagreement with the Court's Opinion on the subject of jurisdiction.

** While this part of the Court's Opinion was dictum, the many prior decisions cited therein were well established law.

any specific period of time for which that duty or burden shall rest. Much depends upon the character of what the property is.' . . .

"The guiding rule may be stated thus: The possession of recently stolen property by a person is evidence from which it can be found he is the thief, but the presumption is one of fact, not of law, and the jurors must pass on it as part of the evidence against the accused."

Many Superior Court cases reiterate (although at times in slightly different language) this well and widely established* presumption of guilt from mere

---

* This presumption, which the majority Opinion finds Constitutionally infirm, is one which has deep roots in other jurisdictions, as well as in this Commonwealth. Act of June 24, 1939, P. L. 872, §817, as amended, May 21, 1943, P. L. 306, §1, 18 P.S. §4817. See also, *Moore v. State*, 241 Ark. 745, 410 S.W. 2d 399 (1967); *People v. Williams*, 61 Cal. Rptr. 238 (C.A. 1967); *State v. Palkimas*, 153 Conn. 555, 219 A. 2d 220 (1966); *Combs v. Commonwealth*, 341 S.W. 2d 774 (Ky. 1960); *Smith v. State*, 8 Md. App. 163, 258 A. 2d 755 (1969); *Commonwealth v. Kelley*, 333 Mass. 191, 129 N.E. 2d 900 (1955); *State v. Boykin*, 285 Minn. 276, 172 N.W. 2d 754 (1969); *State v. Rumney*, 108 N.H. 40, 226 A. 2d 777 (1967); *State v. DiRienzo*, 53 N.J. 360, 251 A. 2d 99 (1969); *People v. Moro*, 23 N.Y. 2d 496, 297 N.Y.S. 2d 578 (1969); *State v. Chambers*, 239 N.C. 114, 79 S.E. 2d 262 (1953); *State v. Kurowski*, 100 R.I. 25, 210 A. 2d 873 (1965); *Tackett v. State*, 443 S.W. 2d 450 (Tenn. 1969); *Reaves v. Commonwealth*, 192 Va. 443, 65 S.E. 2d 559 (1951).

Furthermore, all the Federal circuits have adhered to a similar principle involving the Dyer Act, 18 U.S.C. Sec. 2312. "It is well established, in this Circuit as in all the others, that the possession of a recently stolen vehicle gives rise to an inference of knowledge of its theft in the absence of a satisfactory explanation to the contrary." *United States v. Teasley*, 408 F. 2d 1012 (7th Cir. 1969). See also, *Holden v. United States*, 393 F. 2d 276 (1st Cir. 1968); *United States v. Kompinski*, 373 F. 2d 429 (2nd Cir. 1967); *United States v. Pounds*, 323 F. 2d 419 (3d Cir. 1963); *United States v. Banks*, 370 F. 2d 141 (4th Cir. 1966); *Welch v. United States*, 386 F. 2d 189 (5th Cir. 1967); *Schwachter v. United States*, 237 F. 2d 640 (6th Cir. 1956); *Sewell v. United States*, 406 F. 2d 1289 (8th Cir. 1969); *Jones v. United States*, 378 F. 2d 340 (9th Cir. 1967); *Wheeler v. United States*, 382 F. 2d 998 (10th Cir. 1967).

possession of recently stolen property. *Commonwealth v. Gomori,* 192 Pa. Superior Ct. 325, 161 A. 2d 649; *Commonwealth v. Joyce,* 159 Pa. Superior Ct. 45, 46 A. 2d 529; *Commonwealth v. Kaufman,* 179 Pa. Superior Ct. 247, 116 A. 2d 316; *Commonwealth v. Dock,* 146 Pa. Superior Ct. 16, 21 A. 2d 429.

In a vain attempt to avoid the above-mentioned well established principles of law, the majority base their Opinion upon *Leary v. United States,* 395 U.S. 6, 89 S. Ct. 1532 (1969) and *Turner v. United States,* 396 U.S. 398, 90 S. Ct. 642 (1970). *Leary* and *Turner* are clearly distinguishable on their facts. In *Leary,* the United States Supreme Court held unconstitutional a statutory provision which raised a presumption of knowledge of *illegal importation of marijuana* from the mere possession of marijuana. In *Turner,* the United States Supreme Court held that a statutory presumption of knowledge of *illegal importation of cocaine* from mere possession of cocaine was invalid because much more cocaine is lawfully produced in this country than is smuggled into this country. Furthermore, in *Turner,* a statutory presumption of knowledge of the *illegal importation of heroin* from the mere possession of heroin was upheld because the overwhelming evidence is that the heroin consumed in the United States is *illegally imported.* It is important to note that these two decisions are limited to the particular statutory presumptions in light of the particular circumstances of each case and do not decry or invalidate the Constitutionality of presumptions generally.

The prior decisions of this Court were not written on the sand to be washed away by each wave of new

See also, Annotation, 68 A.L.R. 187 (1930), as supplemented, 56 A.L.R. 2d 1309, 1360 et seq., §41a et seq., as supplemented; 76 C.J.S. Receiving Stolen Goods, Sec. 17b (1952) ; and I Wharton, Criminal Evidence, Sec. 135 (1955).

Justices. When crime is running rampant in our cities (and indeed throughout Pennsylvania and our entire Country) and terrifying our law-abiding citizens, this is no time to overrule well settled principles of law to aid criminals and those accused of crime and further jeopardize the safety and security of Society.

For the above reasons, I vigorously dissent.

Mr. Justice COHEN joins in this dissenting Opinion.