MONTGOMERY and HOFFMAN, JJ., join in this dissenting opinion.

Commonwealth *v.* Shocker, Appellant.

Argued March 13, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*Arthur K. Dils,* for appellant.

*Marion E. MacIntyre,* Deputy District Attorney, with him *LeRoy S. Zimmerman,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, May 18, 1972:

Judgment of sentence affirmed.

DISSENTING OPINION BY PACKEL, J.:

This case involves criminal liability for receiving as cash, without inquiry, two negotiable instruments that were endorsed in blank.

On October 16, 1969, two employees of the Commonwealth of Pennsylvania exchanged their paychecks for cash at a restaurant in Harrisburg. These checks, drawn to the order of "C. Oswald" for $117.50 and "H. W. Blumberg" for $151.63 and endorsed by them in blank were among restaurant receipts stolen during the first hours of the next day. At about 1:00 p.m. on that day, defendant endorsed these checks and exchanged them for cash at a bank in which he maintained his business account. After dishonor, police contacted defendant who freely admitted both his signature and the bank transaction. He volunteered the explanation that, after winning more than $200 at pool from two strangers at a neighborhood bar he regularly frequented, he accepted these checks, bearing only the original endorsements for an exchange of cash and settlement of their losses. He repeated this explanation at trial.

Defendant, never previously convicted of a crime, was found guilty of receiving stolen property, 18 P.S. 4817, and was sentenced to serve seven to twenty months in the Dauphin County Prison, and to pay a fine of $100 and to make restitution.

A major thrust of the Commonwealth's case was that knowledge that one of the strangers was named Eddie and neither endorsement bore the initial "E" should have caused a reasonable man to suspect that the checks were stolen. These circumstances alone may not be said to warrant that legal conclusion.

An instrument endorsed in blank, 12A P.S. §3-204 may be negotiated by delivery, 12A P.S. §3-202, without endorsement. Thus there is no requirement that

the "chain of title" of a check be recorded upon it. It would be inconsistent to conclude that takers of such instruments from second and subsequent holders, 12A P.S. §1-201(20) automatically lack the want of notice (or even good faith) required of one who would be a holder in due course, 12A P.S. §3-302. That such checks were taken from strangers may be very foolish but this would not destroy want of notice. It would be anomalous to impose criminal responsibility for receiving stolen goods based upon the same facts that go to qualify the taker of a check as a holder in due course.

However, it is not necessary to rest upon analogy to the commercial law to determine that this conviction should be reversed. Possession of recently stolen property, without more, may not be sufficient evidence to sustain a conviction. *Commonwealth v. Owens,* 441 Pa. 318, 271 A. 2d 230 (1970). Does defendant's possession of these checks[1] together with his full and uncontroverted explanation thereof provide the inferences necessary to support a guilty verdict?

Familiar legal principles guide review of this question: (1) "[T]he Commonwealth must be accorded the benefit of all favorable testimony and all reasonable inferences arising therefrom," *Commonwealth v. Yobbagy,* 410 Pa. 172, 176, 188 A. 2d 750, 752 (1963) ; *Common-*

---

[1] Defendant cashed the stolen checks during the afternoon, about 12 hours after they were taken from the restaurant. While *Owens* probably does not apply to evidence of possessing stolen property a very short period after the theft, *Commonwealth v. Weaver,* 219 Pa. Superior Ct. 274, 280 A. 2d 585 (1971) (*per curiam,* WATKINS, J., concurring) (possession of clock within two hours after theft) ; *see* Laub, Significant Developments in the Law of Evidence, Annual Survey of Pennsylvania Legal Developments, 43 *Pa. Bar Q.* 303, 314-315 (1972), it should be noted that possession of checks so shortly after theft would be inconclusive in light of the rapid circulation negotiable instruments received.

*wealth v. Hart,* 403 Pa. 652, 655, 170 A. 2d 850, 852, *cert. den.,* 368 U.S. 881 (1961); (2) Circumstantial evidence may support a conviction provided that the circumstances proved are "such as reasonably and naturally to justify an inference of the guilt of the accused" and are of "such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt," *Commonwealth v. Nasuti,* 385 Pa. 436, 445, 123 A. 2d 435, 439 (1956); *Commonwealth v. Reginelli,* 208 Pa. Superior Ct. 344, 351-352, 222 A. 2d 605, 609 (1966) (allocatur refused); (3) Inferences of guilt must rest upon proven facts and conditions, not suspicion and surmise; guilt must be proven and not conjectured. *Commonwealth v. Simpson,* 436 Pa. 459, 464, 260 A. 2d 751, 754 (1970); *Commonwealth v. Garrett,* 423 Pa. 8, 13, 222 A. 2d 902, 905 (1966); *Commonwealth v. Feinberg,* 211 Pa. Superior Ct. 100, 113, 234 A. 2d 913, 919 (1967), aff'd., 433 Pa. 558, 253 A. 2d 636 (1969).

Defendant's explanation does not raise the slightest inference that he knew or should have known that the checks were stolen. "I felt that State payroll checks are good anywhere.[2] And besides that they had just paid me in cash either one hundred or one hundred and twenty dollars [apiece] . . . and I just didn't bother to check into it further." (N.T. 42) There is no evidence of discount or other suspicious circumstances which would alert a prudent man that the offered checks were, in fact, stolen. Under these circumstances, defendant cannot be faulted for failure to react to the

---

[2] Defendant's reliance upon the credit of the Commonwealth is indicative that he viewed the instruments as if they were currency itself. This relatively simple idea is reminiscent of important public policy underlying much of our negotiable instrument law. *Miller v. Race,* 1 Bur. 452, 97 Eng. Rep. 398 (K.B. 1758) (MANSFIELD, J.); *Peacock v. Rhodes,* 2 Dougl. 634, 99 Eng. Rep. 402 (K.B. 1781) (MANSFIELD, J.).

knowledge that one of his companions was named Eddie and neither endorsement contained the initial "E."

This is not to say that the jury was required to believe the plausible explanation defendant gave. The fact finder may always believe all, part, or none of a defendant's testimony, statements and confessions, or the testimony of any witness. *Commonwealth v. Hornberger*, 441 Pa. 57, 61, 270 A. 2d 195, 197 (1970); *Commonwealth v. Ewing*, 439 Pa. 88, 93, 264 A. 2d 661, 663-664 (1970). However, if the fact finder did not believe defendant, without reflection of their reason in the record, this evaluation alone should not afford affirmative proof of knowledge that the checks were stolen so as to satisfy the Commonwealth's burden of proving that element. The sufficiency of the evidence must be tested by the *evidence in the record* and all the reasonable inferences which may be drawn therefrom. Appellate review of the sufficiency of evidence would be most difficult if we were required to speculate whether a record containing insufficient evidence to support a guilty verdict was cured by negative inference based upon the fact finder's private evaluation of demeanor and credibility. *Cf. Dyer v. MacDougall*, 201 F. 2d 265, 269 (2d Cir. 1952) (L. HAND, J.).

That our own Supreme Court is unwilling to engage in such guesswork is evidenced by cases reversed for insufficient evidence although the fact finder had the opportunity to evaluate defendant through his or her testimony or statements. *Commonwealth v. Simpson, supra; Commonwealth v. Feinberg, supra; Commonwealth v. Bausewine*, 354 Pa. 35, 46 A. 2d 491 (1946); cf. *Commonwealth v. New*, 354 Pa. 188, 205, 47 A. 2d 450, 460-461 (1946). This is well illustrated in *Commonwealth v. Garrett, supra*, 423 Pa. at 13, 222 A. 2d at 905 (1966) explicitly posing this analytical problem under analogous circumstances: "The victim,

while testifying to the presence [of a group] of four men [including defendant] in the area prior to the attack, was unable to establish the actual number of his assailants. Under such circumstances, the inference that appellant participated in the crime is no more cogent than the version of the events contained in his statement. And while the Commonwealth was not bound by the exculpatory portions of appellant's statement, [citations omitted], *his guilt could not be established in the absence of affirmative evidence. Since, on the present record,* mere presence on the scene was insufficient, *such evidence was lacking.*" (emphasis added). This does not imply that the possibility of reasonable inferences drawn from evaluation of defendant through his testimony and demeanor may never support a verdict, but only that such circumstances require that there must be some warrant for those conclusions in the record. *Cf. Commonwealth v. Cook,* 220 Pa. Superior Ct. 244, 281 A. 2d 774 (1971) (*per curiam,* HOFFMAN, J., concurring) (incredible explanation of possession of stolen goods and admission that explanation to police was a lie) ; *Commonwealth v. Henderson,* 219 Pa. Superior Ct. 454, 281 A. 2d 777 (1971) (*per curiam,* JACOBS, J., concurring) (inadequate explanation of possession of stolen car).

It might be argued that the defendant's testimony that he cashed his *own* paychecks at 10:00 a.m. on the 17th and the Commonwealth's apparently successful rebuttal that the transaction took place in the afternoon permitted the fact finder's conclusion of "false in one, false in all" and from that evaluation the inference that defendant had actual knowledge that the checks were stolen. However, this is too slender a reed to support this conviction. As stated in *Commonwealth v. Pearl,* 29 Pa. Superior Ct. 307, 309 (1905) : "A mere conflict in the testimony is not enough to con-

demn it, provided that out of all of it the facts relied upon [e]merge[d] with reasonable distinctness and certainty."

The behavior of persons dealing with negotiable instruments should not be tainted by the recency of the theft of the instruments. The possibility of a criminal conviction for possession of ordinary checks creates a serious obstacle to the principle that negotiable instruments, duly endorsed, be treated as couriers without luggage.

The conviction should be reversed.

HOFFMAN and SPAULDING, JJ., join in this dissenting opinion.