UNITED STATES of America ex rel. Charles Lee COOK a/k/a Charles Lee Cookes

v.

S. Kenneth CLIFF, Warden, Lancaster County Prison.

Civ. A. No. 72-317.

United States District Court, E. D. Pennsylvania.

April 12, 1972.

Daniel H. Shertzer, Lancaster, Pa., for petitioner.

Ronald L. Buckwalter, Lancaster, Pa., for respondent.

## MEMORANDUM AND ORDER

EDWARD R. BECKER, District Judge.

We have reviewed Magistrate Naython's report which is filed herewith and we affirm his recommendation that the petition be denied without a hearing and that there is no probable cause for appeal. However, we add the following observations.

■■■ *First,* Magistrate Naythons approached the petition from the viewpoint of the sufficiency of the evidence, but did not deal with the constitutional principles or with the effect on the case of the trial court's charge. Relator has relied principally upon Commonwealth v. Owens, 441 Pa. 318, 271 A.2d 230 (1970), which holds that the judicially-created presumption that mere unexplained possession of recently stolen handguns is sufficient to presume that the defendant knew that they were stolen when he received them is unconstitutional, for it was not "more likely than not" that the defendant knew that the guns were stolen. *Owens* applies a more restrictive constitutional rule than has yet been applied by the federal courts in regard to presumptions.[1] While we doubt we are bound by *Owens,* or that this circuit would follow it,[2] we will nonetheless apply it *arguendo* to the facts of this case and further assume

---

1. *See, e. g.,* United States v. Hamilton, et al. (Kibler, appellant), 457 F.2d 95 (3d Cir. filed March 13, 1972).

2. The *Hamilton* case (*supra* n. 1) is indicative of the consistent approval by the Third Circuit of the doctrine that the unexplained possession of recently stolen goods raises an inference that the defendant knew that the goods were stolen. *See also,* United States v. Ruggere, 450 F.2d 302 (3d Cir. 1971) and Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964). The philosophy of these cases differs from that expressed in *Owens.* The reasoning in *Owens* emanated from the decision of the United States Supreme Court in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), which held unconstitutional the statutory presumption that knowledge of illegal importation may be presumed from evidence of mere possession. The statutory presumption involved in *Leary* stemmed from the conclusion that it was reasonable to infer that illegal substances which are not grown in great quantities in the United States were illegally imported. After a thorough examination of statistical data dealing with the origin of marijuana, the court in *Leary* found that it was not "more likely than not" that a possessor of marijuana knows that it is imported since so much is grown in the United States. *See also* Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), discussed in Magistrate Naythons' report. That situation is not applicable here since we are not dealing with organic substances, the origin of which is easily capable of empirical verification.

that *Owens* is retroactive.[3] If these assumptions were valid, we might be obliged to grant relief if the trial judge had charged the jury in terms of the presumption in question. However, a review of the trial judge's instructions to the jury indicate that they were not charged in terms of the presumption; it was nowhere mentioned. *Owens* is therefore inapplicable. Since no constitutional error occurred, we cannot invade the jury's domain and decide whether the evidence was sufficient to convict the relator; on a petition for writ of habeas corpus, the district court may only decide sufficiency of evidence questions if it is so gross as to amount to a deprivation of due process, and, as Magistrate Naythons has amply demonstrated, there is no gross sufficiency question here.

*Second,* in that part of the report dealing with the search and seizure, Magistrate Naythons ably discussed the facts and the law which justify the search in question on the basis of the wife's consent. We add that the facts show more than mere consent; they show that relator's wife *requested* the police to conduct the search on the premises over which she had control (because of fear for her personal safety). This additional factor strengthens the Commonwealth's position on that issue.

### REPORT—RECOMMENDATION

#### March 16, 1972.

EDWIN E. NAYTHONS, United States Magistrate.

Relator in this application for habeas corpus seeks to challenge his jury conviction for receiving stolen goods in the Court of Common Pleas of Lancaster County. A prison sentence of nine (9)

to eighteen (18) months was imposed after motions for new trial and arrest of judgment were dismissed. Direct appeal in the Pennsylvania Courts led to a *per curiam* affirmance in the Superior Court, Commonwealth v. Cook, 220 Pa. Super. 244, 281 A.2d 774 (1971), and the denial of allocatur in the Supreme Court on January 12, 1972.

In his present federal petition, Cook alleges the following grounds for relief:

(a) that he was convicted of receiving stolen goods upon a presumption that he had knowledge of the fact that the guns were stolen arising from the fact that he had possession of such goods.

(b) the search of relator's apartment was conducted without a search warrant but was consented to by his wife; and that the search was illegal because relator's wife did not have authority to consent to the search.

Briefly summarized, the facts which gave rise to the filing of this petition are as follows:

On October 13, 1968, relator was arrested in his second floor apartment upon an arrest warrant for assault and battery upon his wife. After relator was removed from the apartment, Mrs. Cook requested the officers to search their apartment for two (2) hand guns because she feared for her life. Upon a search, without a warrant, two (2) pistols were found in the livingroom inside a record-player in the back of a turntable. Relator's wife had primarily [1] lived with her husband but at the time of the arrest was temporarily residing with her parents. Commonwealth witnesses established that two (2) guns were stolen from a bar on September 19, 1968. The evidence also established the circumstances of the theft of the guns and relator's later possession.

---

3. Relator was tried on Jan. 27, 1969 and *Owens* was decided on November 12, 1970. The test for retroactivity would seem to indicate that *Owens* should be applied retroactively since it is intimately connected with the fact-finding process. *See,* Bannister v. United States, 446

F.2d 1250, 1257–1258 (3d Cir. 1971), and Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972).

1. Mrs. Cook kept her clothes and her baby's personal items at the apartment where her husband resided.

At the trial relator acknowledged that initially he had lied to the police, telling them that he had disposed of the guns because he realized that having them could cause him trouble. He further testified that he had acquired the guns from a stranger. He indicated that one weekend after a quarrel with his wife he went to a bar and began drinking heavily. A stranger approached him and they began discussing relator's marital problems. The stranger indicated that if he had a wife like that he would kill her. Relator asked "how", and the stranger replied, in effect, "with these guns I am giving you." Relator testified that he returned home with the guns, but did not have occasion to use them.

The jury found relator not guilty of both burglary and larceny, but guilty of receiving stolen goods. Relator does not quarrel with the fact that the guns were stolen and that he received some or all of such goods. His sole argument is that—in light of Commonwealth v. Owens, 441 Pa. 318, 271 A.2d 230 (1970), the Commonwealth did not prove beyond a reasonable doubt that relator knew or had any reason to know the guns were stolen. The *Owens* case adopted the decisions of the United States Supreme Court in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970).

The general teaching of *Leary* and *Owens* is that a criminal presumption is unconstitutional "unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend". 395 U.S. at 36, 89 S.Ct. at 1548. (footnote omitted.)

*Leary* reversed a conviction for the possession of marijuana knowing the same to have been illegally imported, by invalidating the statutory presumption that such knowledge may be presumed from evidence of mere possession.

*Turner* dealt with an almost identical knowledge presumption concerning possession of cocaine and heroin. The Court struck down the presumption as applied to cocaine on the basis of its finding that large amounts of coca leaves, the raw material from which cocaine is derived, are legally imported for medicinal purposes. Respecting heroin, however, the Court sustained the presumption in light of evidence that virtually all domestically consumed heroin is illegally imported and that the fact concerning the source of heroin is widely known to those who traffic in the drug.

In *Owens,* supra., the defendant's only connection with a stolen pistol was that he was seen with it in his possession three (3) weeks after the theft. The Supreme Court of Pennsylvania held that in these circumstances it was not "more likely than not" that the defendant knew the goods were stolen. Thus the jury could not be allowed to presume the requisite guilty knowledge.

▮ In the instant case, relator was "shown to have possessed the guns at least twenty-four (24) days after their theft, but the jury was presented with additional circumstances relevant to relator's guilty knowledge. First, relator had the guns hidden in his apartment, and he indicated to police that he realized their possession could cause him trouble. In addition, relator gave the police conflicting stories as to his connection with the guns, and the explanation he offered the jury was · at best farfetched".[2] Although the Commonwealth's evidence of possession standing alone may not have been sufficient to convict relator, when he chose not to rest his case but instead took the stand in his own defense, he did so at his peril. Commonwealth v. Marino, 142

---

2. See concurring opinion by Hoffman, J., Superior Court of Pennsylvania, September 30, 1971.

Pa.Super. 327, 16 A.2d 314 (1941); Act of June 5, 1937, P.L. 1703, No. 357 Section 1, 19 P.S. § 481. The jury was of course free to disbelieve his explanation and to consider relator's lack of truthfulness as an additional circumstance bearing on his knowledge of whether the guns were stolen.

Therefore, unlike the situation in *Owens,* supra, additional evidence besides the mere possession of stolen goods was before the jury. From relator's possession and the additional facts the jury could properly conclude beyond a reasonable doubt that the guns were stolen and that relator was possessed of the guilty knowledge of that fact.

That the *Owens* decision was intended to be limited only to its facts and not to the instant matter wherein the evidence has clearly shown the manner in which relator came into possession of the stolen pistols, we note the Court's language at 324 of 441 Pa., at 233 of 271 A.2d:

"We reiterate that there is nothing whatever in the record touching upon how appellant originally came into possession of the stolen pistol, and the possibilities of innocent acquisition seem myriad: a gift, payment for services rendered, payment of a debt, purchase from a seemingly reputable dealer in used guns. The only empirical data furnished to us by either party casts considerable doubt upon the probable factual strength of the knowledge presumption." [Emphasis added.]

Here, until, confronted with the guns, relator had told the police that he had thrown them on a "trash truck" because he. knew that having these guns would "cause him alot of trouble". The jury was thus at liberty to believe from rela-

tor's statement that he knew these guns were stolen because the source from which they were obtained and his expression of fear of resulting trouble if found in relator's possession.

■■ Turning to relator's second allegation of an illegal search and seizure of the two (2) pistols, we find that his argument is without merit. It has been held that voluntary consent by a wife or other relative may under proper facts support a search that turns up evidence of an accused's criminal conduct. See Maxwell v. Stephens, 348 F.2d 325, 326–327 (8th Cir. 1965) cert. denied 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353. In the case of United States v. Ball, 344 F. 2d 925, 926–927 (6th Cir. 1965) the court approved testimony given by a government witness regarding incriminating evidence, observed after a *warrantless* entry into the accused's home with the consent of his wife. The court supported its ruling by citing cases which had held that, under the facts there involved, a wife's consent was a valid substitute for a search warrant. Roberts v. United States, 332 F.2d 892, 895–898 (8th Cir. 1964) cert. denied 380 U.S. 980, 85 S.Ct. 1344, 14 L.Ed.2d 274; Stein v. United States, 166 F.2d 851, 855 (9th Cir. 1948) cert. denied 334 U.S. 844, 68 S.Ct. 1512, 92 L.Ed. 1768. We think it right to add that the Supreme Court in Amos v. United States, 255 U.S. 313, 317, 41 S.Ct. 266, 65 L.Ed. 654 (1921) specifically declined [3] to rule on the question here involved holding there that the wife's consent had been coerced. We hold that in the factual context of this case the wife's consent made lawful the seizure of the guns and their use as evidence. In the case at bar it is uncontradicted that the search for

3. Page 317 of 255 U.S., page 268 of 41 S.Ct., the Court said:
"The contention that the constitutional rights of defendant were waived when his wife admitted to his home the government officers, who came, without warrant, demanding admission to make a search of it under government authority, cannot be entertained. *We need not consider whether it is possible for a wife, in the absence of her husband, thus to waive his constitutional rights,* for it is perfectly clear that under the implied coercion here presented, no such waiver was intended or effected." [Emphasis Added.]

the guns was made only at the wife's request, and it is also clear while she was temporarily residing with her parents, she nevertheless maintained the apartment as her primary home.[4] It would be incongruous to hold that a wife, who certainly has the rights of use and occupation of the premises she shares with her husband, cannot consent to a search of those premises. We agree with the Eighth Circuit . . . the right of the wife . . . to enter the home which was in her possession and control cannot be seriously questioned and that her invitation to and authorization to the officers to enter and search was an outgrowth thereof. It is not a question agency, for a wife should not be held to have authority to waive her husband's constitutional rights. This is a question of the wife's own rights to authorize entry into the premises where she lives and of which she had control. Roberts v. United States, supra, 332 F.2d at 896. Our holding that a wife can consent to a search of the premises she shares with her husband is limited to those premises under mutual control. The issue of whether a wife can consent to the search of premises reserved exclusively for the husband is not before us, and we express no opinion on that question.

Since the only issues which we must now decide concern facts which are amply developed in the existing state court records, we deem it unnecessary to hold an evidentiary hearing.[5] Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963).

Wherefore, we enter the following:

## RECOMMENDATION

Now, this 17th day of March, 1972, it is respectfully recommended that the petition be denied without a hearing. There is no probable cause for appeal.

---

4. Relator testified at 87 that the one key to the apartment was usually in the possession of his wife.

5. The record is comprised of testimony taken at the pretrial motion to suppress evidence (which was denied) and at the trial itself.