**Vernon Carl MARSH, Petitioner,**

**v.**

**J. F. MAZURKIEWICZ, Superintendent State Correctional Institution at Rockview, Bellefonte, Pennsylvania.**

**Civ. A. No. 11–73 ERIE.**

United States District Court,
W. D. Pennsylvania.

June 19, 1975.

## OPINION

WEBER, District Judge.

Vernon Carl Marsh is a state prisoner currently serving a sentence of life imprisonment for the first degree murder of Bruno C. Roehrl. Marsh filed a petition for a writ of habeas corpus and he was granted an evidentiary hearing before this court.

The history of Marsh's case in the state courts is recited in our prior opinion of March 18, 1974, 372 F.Supp. 783 [W.D.Pa.]. In that opinion we made no findings on the evidence received but found that a remand to the state courts for failure to exhaust state remedies was indicated. We read *Commonwealth v. Wayman*, 454 Pa. 79, 309 A.2d 784 [1973] as either subsequently announcing a constitutional right or creating a new remedy for petitioner in the state courts. Petitioner appealed from that determination and the United States Court of Appeals for the Third Circuit remanded the matter to this court "for a decision on the merits of appellant's claims, with consent by appellee". [Memorandum Order, Third Circuit April 4, 1975].

Marsh first seeks a determination that the refusal of the state courts to allow him to withdraw his plea of guilty to a general charge of murder constituted a violation of his right to due process of law. Marsh contends that his guilty plea was tainted in at least three respects. He claims that the plea was primarily motivated by a confession which the state courts subsequently determined to be invalid, that the suppression court's preliminary decision that that confession was admissible rested on false testimony produced by the prosecution, and that pretrial publicity carried the taint of the first two wrongs through to the plea proceedings.

On the question of pretrial publicity petitioner produced evidence of the news coverage given to his arrest and arraignment on local television, in local newspapers and in national magazines.

James D. McDonald, Jr., Erie, Pa., for petitioner.

Charles D. Agresti, and Robert H. Chase, Erie, Pa., for respondent.

Television newsfilms were viewed by the court and newspaper and magazine articles were received in evidence. Circulation figures for the publications and audience ratings for the television news programs were produced. We find that the pretrial publicity, while substantial, was not such "inherently prejudicial publicity which saturated the community", *Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 [1966], as would have prevented a fair trial had petitioner chosen not to plead guilty. Moreover, we find no evidence in the record that the possible effect of pretrial publicity on a jury was a factor in the petitioner's mind when he made his decision to plead. The transcript of petitioner's testimony at the state post conviction provides no evidence that petitioner himself considered this issue. Petitioner's counsel testified at the evidentiary hearing before this court that he had considered the publicity when advising the plea, but counsel did not discuss with his client either the effect of such publicity or the alternatives of a delay in trial or a change of venue. (Transcript, pp. 73, 87). Accordingly, we feel that the evidence on pretrial publicity is relevant only in assessing the competency of petitioner's counsel's advice to plead guilty.

Petitioner next cites a discrepancy between the testimony of police Sgt. Weir at the suppression hearing and his testimony at the first degree-of-guilt trial. At the suppression hearing Sgt. Weir testified that Marsh had not asked police officers for permission to call his wife before he made his written confession, but Weir directly contradicted this statement in his testimony at trial. Petitioner does not claim that the "false testimony" at the suppression hearing is itself sufficient to require a setting aside of his guilty plea. Indeed, a claim that a prosecution witness gave perjured testimony is insufficient for federal habeas corpus relief from a state conviction absent any proof that the prosecution suborned perjury. *U. S. ex rel.*

*Smith v. Reincke*, 354 F.2d 418 [2nd Cir. 1965]. See also *Johnson v. Bennett*, 386 F.2d 677 [8th Cir. 1967], vacated on other grounds, 393 U.S. 253, 89 S.Ct. 436, 21 L.Ed.2d 415; *United States ex rel. Mathis v. Rundle*, 266 F.Supp. 1003 [D.C.Pa.1967], aff'd, 3 Cir., 394 F.2d 748; *United States ex rel. Cornitcher v. Myers*, 253 F.Supp. 763 [D.C.Pa.1966]. There is not even an allegation here of subornation of perjury. Petitioner contends, however, that the false testimony was at least one of several influences which tainted his plea. However, petitioner has not produced evidence showing any causal relation between this factor and his decision to plead guilty. Neither the testimony of his trial counsel before this court nor the testimony of petitioner himself in the post-conviction hearing shows that the false testimony was given any weight by petitioner himself when he made his decision to plead.

Petitioner also argues that his trial counsel, deprived by the false testimony of the true facts of the suppression issue, could not competently advise him. However, petitioner has been unable to provide the court any authority for the proposition that federal habeas corpus relief for incompetent advice of counsel may encompass such a situation, and the court has discovered no case which stands for such a proposition.

Petitioner's case for invalidating his guilty plea to a federal habeas corpus proceeding ultimately rests on his ability to demonstrate that he has satisfied the requirements of *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 [1970]. *McMann* requires that the guilty plea be primarily motivated by a constitutionally proscribed confession and be prompted by inadequate advice of counsel. Our review of the state court records and the evidence presented before this court convinces us that petitioner's primary motivation for the entry of his plea of guilty to murder generally was a confession, and the fruits thereof, held by the Supreme Court of

Pennsylvania to be constitutionally proscribed. We accept the determination of the state court on the question of the constitutional infirmity of the plea although we believe that the question was a close one. We observe that the infirmity in the plea resulted only from the court not being "persuaded that [Marsh] was fully apprised that the Commonwealth would bear the economic costs of providing [him] with counsel, if he were indigent". *Commonwealth v. Marsh*, 448 Pa. 292, 298, 293 A.2d 57, 61 [1972]. We therefore reach the question of the competency of the advice rendered petitioner by his trial counsel.

Our independent review of the record leads us to agree with the conclusion reached by the Supreme Court of Pennsylvania in its second opinion in *Commonwealth v. Marsh*, 448 Pa. 292, 293 A.2d 57 [1972] that trial counsel's advice was not incompetent.

> "When [Marsh's] pretrial motion to suppress his confession was denied, his counsel was faced with the decision of whether to let [Marsh] go to trial and risk a death penalty or to plead guilty and take his chances with a three-judge panel at a degree-of-guilt hearing. Considering the strong evidence that this was a cold-blooded robbery-murder, we cannot say that the advice [Marsh] received from his counsel was not 'within the range of competence demanded of attorneys in criminal cases.' " 448 Pa. at 298, 293 A.2d at 61.

█ The test is not whether the advice given was correct but whether, under the circumstances existing at the time the advice was given, the advice was within the range of "normal competency". *Moore v. United States*, 432 F.2d 730, 737 [3rd Cir. 1970] and cases cited therein. In arriving at our conclusion on this issue we have considered the fact that at the time petitioner's plea was entered there was little published authority detailing the specific language in which police officers should convey to prisoners the information required by *Miranda*. We have also considered the testimony presented to the suppression court. We have concluded that at the time counsel advised the guilty plea there was room for dispute among competent lawyers as to the admissibility of petitioner's confession in the light of the *Miranda* warning and the disputed issue of fact as to plaintiff's request to call his wife.

There are of course certain exceptional cases in which, regardless of the competence of defense counsel's advice, a guilty plea was successfully attacked in a federal habeas corpus proceeding. The petitioner cites *Chambers v. Florida*, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 [1940], as an example of a situation in which the "circumstances that coerced the confession have abiding impact and also taint the plea". *McMann*, cit. supra, 397 U.S. p. 767, 90 S.Ct. p. 1447. In *Chambers* the Court accorded relief to the petitioners because

> "from arrest until sentenced to death, petitioners were never—either in jail or in court—wholly removed from the constant observation, influence, custody and control of those whose persistent pressure brought about [their incriminating statements]." 309 U.S. at 235, 60 S.Ct. at 476.

In *Chambers* extraordinary abuse of prisoners by police officers produced the confessions and continued unabated until the guilty pleas were entered. Petitioner herein has not demonstrated that the circumstances which attended the entry of his guilty plea even remotely approximated the extraordinary happenings in *Chambers*.

The facts of Marsh's case more closely parallel the facts of *McMann*. In *McMann* each of the respondents allegedly would have put the state to its proof if there had been a substantial chance for acquittal. However, because of the existence of a confession which might have been admissible against him, each had decided to plead guilty. The Supreme Court reasoned that under such circumstances the entry of a guilty plea follow-

ed by a collateral attack on the plea represented a refusal to present federal claims to a state court. Whether the by-passing of state remedies represented an intelligent act was held to depend on "whether [the defendant] was so incompetently advised by counsel concerning the forum in which he should first present his federal claim that the Constitution will afford him another chance to plead." *McMann,* cit. supra, 397 U.S. pp. 768–69, 90 S.Ct. p. 1448.

■ We think that Marsh, like the respondents in *McMann,* has made a claim which can be reduced to an assertion that the "admissibility of his confession was mistakenly assessed and that since he was erroneously advised, either under the then applicable law or under the law later announced, his plea was an unintelligent and voidable act." *McMann,* cit. supra, p. 769, 90 S.Ct. p. 1448. Where, as here, the plea is based on reasonably competent advice, it is an intelligent plea not open to attack merely because it was ultimately determined that counsel misjudged the admissibility of the confession.

■ The second claim upon which petitioner seeks relief is the sufficiency of the evidence presented at the second degree-of-guilt trial to support a finding of murder in the first degree. Petitioner cites several Pennsylvania state court decisions which establish standards for sufficiency of evidence to sustain a conviction. We do not believe that petitioner's cases are on point, however. Allegations of insufficient evidence in a state court trial are generally not reviewable by writ of habeas corpus. *Young v. State of Ala.,* 443 F.2d 854 [5th Cir. 1971]; *Freeman v. Stone,* 444 F.2d 113 [9th Cir. 1971]; *United States ex rel Cook v. Cliff,* 341 F.Supp. 1038 [E.D.Pa.1972]; *United States ex rel Stukes v. Shovlin,* 329 F.Supp. 911, 919 [E.D.Pa.1971], aff'd, 464 F.2d 1211 [3rd Cir. 1972]. Only where a conviction has no evidentiary basis or is based on a gross insufficiency of evidence is it subject to collateral attack in the federal courts. *Freeman v. Stone,* cit. su-

pra, and cases cited therein; *United States ex rel Spears v. Rundle,* 268 F. Supp. 691, 700 [E.D.Pa.1967], aff'd, 405 F.2d 1037 [3rd Cir. 1969].

We find that some evidence was presented at the second degree-of-guilt trial from which the inference of a robbery-murder might properly be drawn. See *Commonwealth v. Marsh,* 448 Pa. 292, 296, 293 A.2d 57, 60 [1972] where the sufficiency of the evidence to support the first degree finding is discussed.

Petitioner's final claim is that the failure of the prosecutor "to actively promote" its plea bargain and the refusal of the state court to accept same requires that the first degree verdict be invalidated.

A plea bargain was arranged between Marsh's trial counsel and the District Attorney's office prior to the second degree-of-guilt hearing. The parties stipulated that the evidence supported a finding of no higher a degree of guilt than second degree and Marsh agreed to forego any further attacks on the validity of his plea of guilty to murder generally.

■ Petitioner asserts that once this agreement was reached it was incumbent on the prosecution actively to promote the same. We cannot find in the record, however, any proof that the prosecution did not make a good faith effort to promote the agreement. Moreover, "although the opposing attorneys are bound by the agreement, the court is not bound to accept it." *Marsh,* 448 Pa. at 295, 293 A.2d at 60. See also *United States v. Gallington,* 448 F.2d 637 [8th Cir. 1973] and cases and articles cited therein.

". . . not only did the trial court have the authority to refuse to accept the *post-plea* arrangement that was made here, but it would have been error for the court to accept such an arrangement. I do not believe that the courts of this Commonwealth should allow a defendant to bargain away his rights to appellate review of his conviction or his rights of collateral attack. If a guilty plea has been voluntarily, intelligently, and lawfully entered, there is no need for a

prosecutor to seek a further concession from a defendant that he surrender additionally whatever rights he may have to direct appeal or collateral review. To sanction such arrangements serves no proper interest of justice and would only invite attempts to insulate guilty pleas unlawfully obtained from appropriate appellate review." J. Roberts, concurring, *Commonwealth v. Marsh*, 448 Pa. 292, 299, 293 A.2d 57, 61–62

Petitioner attempts to characterize the plea bargain as a stipulation of facts, a matter which the court was bound to accept. We find that the arrangement involved a stipulation as to the legal effect of facts and, as such, required court approval. There was no violation of petitioner's due process rights by the state court's refusal to accept the plea bargain.

### ORDER

And now this *19th day of June, 1975*, after evidentiary hearing thereon, and the consideration of briefs and arguments of counsel, it is ordered that the within petition for writ of habeas corpus be denied. If a Certificate of Probable Cause were to be sought the same would be granted.